Matthias, J.
 

 It has been the claim of the defense that it is manifest from the provisions of the lease in question that the defendant is not the lessee therein, but that the United States government is the lessee, and hence that the defendant has no liability whatever to the plaintiff, growing out of the covenants or conditions of the lease, either for the payment of rentals or for damages caused to the premises during the term
 
 *127
 
 of such lease; or, if such conclusion is not justified by the terms of the lease in question, that its provisions are ambiguous and call for the application of the rule permitting the introduction of parol evidence showing the situation of the parties and the surrounding circumstances to enable the court to interpret the instrument and arrive at the intention of the parties, which, because of the employment of ambiguous language, is doubtful and uncertain.
 

 The provisions of the lease, which it is claimed require a holding that the government and not the defendant is liable as lessee, or at least render the instrument doubtful or uncertain in that regard, will be noted. The first covenant thereof is as follows:
 

 “The said lessee having been designated as the individual in whose name leases shall be taken for the premises situated near 'Chillicothe, Ohio, to be leased to the United States of America as and for the cantonment site for the Eighth Division Area, National Army, in accordance with the option hereto attached, which has been assigned to the lessee herein by the said Lieut. Col. C. H. McNeil, Quartermaster’s Corps, U. S. Army. It is agreed that said premises shall be leased for the express and sole purpose of re-leasing the same to the United States of America for the cantonment site, Eighth Divisional Area, National Army, subject to the same conditions as herein set forth.”
 

 Later in this instrument the privilege of renewing this lease is granted “from year to year as often as the needs of the public service may re
 
 *128
 
 quire.” Further along in the instrument the lessor agrees to “warrant and defend to the lessee, its officers and agents * * * free of charge to the government,” etc. A later pertinent paragraph in the same lease is as follows:
 

 “Lessor is subrogated to all the rights of Col. Bichard Enderlin, arising out of his lease of the within premises to the United 'States of America. It is further understood that the lessee shall use all ordinary care to protect the bank along the Scioto river from being washed.”
 

 In the provision relative to the arbitration of claims by a board, it is provided that ‘ ‘ The findings of such board when approved by the commanding general, central department, shall be final.” A further pertinent recital in this lease is as follows:
 

 “Nothing contained in this lease shall be regarded as in any way prejudicing the right of the lessee at any time during the term of this lease or any renewal thereof, to purchase, or to proceed to the condemnation of the lands hereby demised, or any part thereof on its own behalf, so as to obtain the fee-simple title thereto, by means of such process of condemnation as is now or may hereafter be provided by law. And in the event of acquisition in such manner of the whole or any part of said premises, the rental hereinbefore stipulated shall abate proportionately.”
 

 At the bottom of the lease appears the following, under which is the signature of the plaintiff :
 

 “Beceived of John H. Backer, a,s treasurer of the real estate committee of the War Council, Chillicothe, Ohio, the sum of twelve hundred a.nd
 
 *129
 
 twenty-five dollars ($1,225), being in full payment satisfaction for all crop damage on the premises leased by said Peter J. Blosser to Col. Bichard Enderlin for the uses of the United States of America, in accordance with the terms of the option of Lieut. Col. C. H. McNeil, U. S. A.”
 

 It is quite evident that the lease in question contained the peculiar language above set forth because of the unusual nature of the transaction involved. But it is necessary to look further to the essential terms of the contract, and to ascertain therefrom the nature and extent of the obligations thereby imposed and the parties bound by the various covenants and conditions.
 

 It is to be observed that the articles of agreement are “between Col. Bichard Enderlin of Chillicothe, Ohio (hereafter designated as lessee of the first part), and Peter J. Blosser,” etc. Here then is a clear and unequivocal statement that wherever subsequently the word lessee is used, Enderlin is referred to. A conclusion that some one else is the lessee, or that a different party was intended as such when that term is employed subsequently in the instrument, would be contrary to its express terms and in conflict with the well-established principle that in construing a written instrument there can be no intendment or implication which is inconsistent with an express provision thereof.
 

 The lease agreement was signed by the defendant, not as agent for any one, but individually, and it does not appear anywhere ini the instrument that he was acting in the capacity of agent;
 
 *130
 
 indeed, the language of the lease is quite the contrary. By the clear and express terms of the instrument, the defendant is obligated to pay the rental stipulated, and also damages that might accrue during the term of the lease. That the defendant and not the United States government was the lessee is manifest from the further provision as to the use which was to be made of this land, and. this is shown with special clearness in a provision whereby the “lessor is subrogated to all the rights of Col. Richard Enderlin arising out of his lease of the within premises to the United States of America.” Here is a direct contradiction of the theory that the government was the lessee in the instrument in question, for the defendant is not only designated, but is expressly named, as the lessee. Here is also a refutation of the theory that it was not the intention of the parties that Enderlin should be bound by the obligation as to the payment of rent and damages, but that it was intended or expected that the government of the United States was thereby obligated to pay the same to the plaintiff. This clause is entirely consistent with other provisions as to the purpose for which the land was to be used and the manner in which the government was to obtain such right, to wit, by lease from the defendant, and this clause, while not releasing Enderlin from the obligation of his lease, required that the lessor should be subrogated to all of Enderlin’s rights arising out of his lease to the government. If' Enderlin were the agent of the government such provision would have been wholly
 
 *131
 
 unnecessary, for the lease would have inured, to the benefit of the government, and a lease from the defendant to the government would not have been required. As between the defendant and the government, there seems to have been no contemplation whatever of agency.
 

 It is perfectly clear from the averments of the second defense that the defendant represented the war council, the local organization whose chief mission was to assure the location of the cantonment at 'Qhillicothe, and the method of the execution of such lease was adopted because of the differences as to rental values between the local owners of real estate desired for such purpose and the government officials, although it is asserted by counsel for plaintiff that one of the purposes of the execution of these leases in the manner adopted was to render it possible for plaintiff to look to an individual for redress instead of being under the necessity of pursuing the government. It is to be borne in mind, however, that our province is to construe or interpret the contract, if necessary, and to enforce its provisions, and not to determine the reasons for the peculiar form of the execution thereof, or the motives of the parties to such contract.
 

 The recital that the land leased to the defendant is to be in turn leased to the government for use as a cantonment, not only authorizes but requires its use for the unusual purpose; but that does not serve to substitute the government as lessee, or release the defendant from the obligations hel assumed by clear and express stipulation.
 

 
 *132
 
 The provision heretofore quoted, with reference to the necessity of final approval of the finding of the board of arbitration with reference to damages by an officer of the government, is not inconsistent with the obligation of the defendant as lessee, for it was only natural to insert such a clause in the lease in view of the known requirement in that regard in the lease to be thereafter executed by Enderlin to the government. We cannot conclude that the provisions above quoted are such as to release the defendant from the obligations which are imposed upon him by the clear and unequivocal language of the instrument, or even that there are any such inconsistencies in the provisions of the lease as to make the entire lease ambiguous in its terms and justify the admission of parol evidence.
 

 The authorities are quite uniform as to the principle applicable to the situation here presented. It is stated in 2 Parsons on Contracts (9th Ed.), 717, as follows:
 

 “If the meaning of the instrument, by itself, is intelligible and certain, extrinsic evidence is admissible to identify its subjects or its objects, or to explain its recitals or its promises, so far, and only so far, as this can be done without any contradiction of, or any departure from, the meaning which is given by a fair and rational interpretation of the words actually used.”
 

 If, in this ease, there is no liability upon the part of the defendant, it is only because he. is not the lessee, although the lease so designates him, and, if he need not respond either for rentals or
 
 *133
 
 damages, it is only because he did not intend to so obligate himself, although he expressly agreed to pay such rental and damages. Certainly the written instrument cannot be thus construed, nor . can its terms be thus varied by parol.
 

 The text of 6 Ruling Case Law, page 876, is pertinent and applicable:
 

 “The determination of the liability of the signer depends upon the construction of the written agreement, and, in accordance with the rule that the intention of the parties as derived from the instrument determines the construction of a contract, the weight of authority is to the effect that the liability of the signer is governed by the intention of the.parties as thus derived from the instrument.”
 

 Numerous oases could be cited in our own state supporting the same proposition, but we refer particularly to the ease of
 
 Monnett
 
 v.
 
 Monnett, Adm’r.,
 
 46 Ohio St., 30, 17 N. E., 659, and especially to the language of Williams, J., in the opinion at page 37 (17 N. E., 663), as follows:
 

 “We know that the rules, which forbid the introduction of parol evidence to control written contracts, do not exclude proof of the consideration, or of promises or agreements wholly collateral to the writing, like agreements between sureties or joint promisors; nor apply, where express reference is made in the written instrument, to a parol contract, or where the written instrument does not purport to be a complete expression of the contract, or evidently appears to express only some part of it, and that which is sought to be
 
 *134
 
 proven, does not contradict its terms, but is consistent with them. But the evidence admitted in this case, does not fall within either of these classes. Its purpose and tendency were to prove that the instrument did not contain the true agreement between the parties, and. to establish a contract materially different from that expressed by it. Such evidence cannot be admitted, except when the reformation of the instrument is sought in equity.”
 

 In the instant case, reformation of the instrument was not sought, and it is held by the clear weight of authority that, except where the reformation of a written contract is sought in equity, evidence cannot be introduced to show an agreement between the parties materially different from that expressed by the clear and unambiguous language of the instrument. The opinion of the court in
 
 Mosier
 
 v.
 
 Parry,
 
 60 Ohio St., 388, 54 N. E., 364, much relied upon by counsel for defendant, is not inconsistent with that principle.
 

 Upon the proposition that a lessee is liable upon his express covenant to pay rent during the term and to restore the property or pay damages for failure to do so, though the premises have been re-leased by such lessee with the lessor’s assent, and rents have been accepted by him from the second lessee, it is only necessary to cite
 
 Sutliff
 
 v.
 
 Atwood,
 
 15 Ohio St., 186,
 
 Harmony Lodge
 
 v.
 
 White,
 
 30 Ohio St., 569, 27 Am. Rep., 492,
 
 Taylor
 
 v.
 
 De Bus,
 
 31 Ohio St., 468, and
 
 Smith
 
 v.
 
 Harrison,
 
 42 Ohio St., 180.
 

 A further contention made by counsel for de
 
 *135
 
 fendant with respect to the claim of plaintiff for damages is that such claim was included, or should have been included, in the award made by the jury in the action in the federal court, referred to in the third defense. That was a suit instituted by the government, not pursuant to any provision of the lease, but by virtue of an act of Congress, and was for the purpose of appropriation and condemnation of the plaintiff’s land. The possibility of such a proceeding was recognized, as indicated by the terms of the lease, providing that in the event of acquisition in such manner the stipulated rental should abate proportionately. However, no purpose was indicated to release the lessee from any obligation with reference to the payment either of rentals which accrued prior to such acquisition, or for damages caused to such land during the term of the lease, in accordance with the express requirement of its provisions. The record of the proceeding in the federal court was brought into the record in this case, and reference may therefore be made to the same. The prayer of the petition was that the lands be condemned, and that a jury be impaneled to ascertain the just compensation to be paid the owner thereof,' and, upon the trial, the jury was instructed that there was but one question to decide, and that was the market value of the land, stripped of the buildings which belonged to the government, and that by their verdict they should say “what the ground is worth just as you. find it at this time.” It is clear that no question other than the value of the land being condemned was' considered or determined in
 
 *136
 
 that proceeding, and it is equally clear that no question of damages which may have accrued prior thereto could have been determined in that action. Such claim arose from the terms of the lease, and that instrument, or any rights or remedies thereunder, had no place in the appropriation proceeding. The right of action of the plaintiff against the defendant, having previously accrued, of course could not pass to the government. It is equally well settled that a lessee or grantee is not relieved of the obligations of his covenant by reason of a transfer or grant of his title to another.
 

 With reference to the claim for rental under the first cause of action, it is deemed sufficient to say we find no error. Under the terms of the lease the defendant was obligated to pay rental so long as possession was retained thereunder, just as. he was required to pay damages done the land during tenancy under the lease.
 

 We are in accord with the contention of counsel for defendant that the theory adopted by the trial court relative to the measure of damages to which plaintiff was entitled was erroneous. The plaintiff was entitled to recover such amount as would fairly and reasonably compensate him for the damage done to his land, as provided by the terms of the lease, and its measure was the difference between the market value the land would have had at the time of surrender of possession by the defendant or his sublessee, if it had remained in the condition in which it was at the time possession was taken by the lessee, and its market value in the condition in which it was
 
 *137
 
 placed by the action of the defendant or his lessees during such tenancy. The instruction of the trial court, given before argument, was that the measure of damage in the second cause of action is the difference between the sum allowed the plaintiff in the condemnation suit and the fair market value of said land in April, 1920, considering the land to have been in the same condition it was in June, 1917, and the instruction in the general charge was to the same effect, both of which were excepted to by counsel for defendant. It was error to take as the standard the value fixed by the jury in the appropriation case, in which ease the defendant was not a party. .
 

 For the reasons stated the judgment insofar as it disposes of the first cause of action is affirmed, but insofar as it affects the second cause of action is reversed and the case is remanded to the court of common pleas for a new trial.
 

 Judgment •accordingly.
 

 Marshall, O. J., Day, Allen, Kinkade and Robinson, JJ., concur.