GURTLER, D. B. A. W. A. GURTLER & CO., APPELLANT, v. KAUER, DIR., ET AL., APPELLEES.*

(No. 4677—Decided March 5, 1952.)

*Mr. Harold P. Chapman* and *Mr. Rodney B. Baldwin,* for appellant.

*Mr. C. William O'Neill,* attorney general, *Mr. Hugh E. Kirkwood, Jr.,* and *Mr. Everett N. Krueger, Jr.,* for appellee.

WISEMAN, J.   This is an appeal on questions of law from the judgment of the Common Pleas Court of Franklin County in a mandamus action in which the plaintiff asks that a writ be issued commanding the Director of Highways of the state of Ohio to execute and deliver to the Auditor of State a voucher in the

*Reporter's Note:   Pursuant to the mandatory provisions of Section 12286, General Code, the present action should have been by the state on the relation of the party seeking the writ of mandamus.   However, as Section 12223-5, General Code, requires that the style of the case shall be the same in the reviewing court as in the court of origin, the style of the instant case is so retained.

sum of $14,172.75 in favor of the plaintiff and that the Auditor of State execute and deliver a warrant on the Treasurer of State in favor of the plaintiff for said amount.

At the trial it was agreed that for certain work performed there was due the plaintiff the sum of $640.80, and a peremptory writ was issued requiring payment of that amount. The trial court resolved the principal issues against the plaintiff on its claim for the larger amount.

We have been furnished a copy of the well considered and comprehensive opinion of the trial judge who considered all the aspects of the case. We are in accord with the judgment of the trial court. We would be satisfied to adopt his opinion as our own. However, the questions presented to this court merit further discussion.

The plaintiff who is engaged in the contracting business entered into a written contract with the state of Ohio, whereby plaintiff agreed to furnish labor, tools and equipment for the raising, throwing, laying, surfacing, etc., of railroad tracks, including "turnouts" taken up and installed, etc., necessitated by a railroad grade-separation project. The disputed items relate to payment under the contract for labor furnished in connection with the "turnouts." A determination of this issue requires an interpretation of the contract, together with the plans and specifications expressly made a part of the contract.

Specifically, the question presented is whether, in computing the lineal footage of the main track in arriving at the amount of compensation due, the lineal footage of the main track through the "turnout" should be deducted. In other words, the plaintiff contends that he is entitled to compensation for the lineal footage of the main track through the turnout,

and in addition thereto compensation for the turnout. The defendant contends that the "turnout" is regarded as a unit which includes the main track and that the plaintiff is to be compensated therefor on a unit basis. The contract expressly provides that for labor furnished with respect to the "turnouts" the plaintiff is to be compensated on a unit basis.

What does the unit designated as a "turnout" include? A "turnout" has been defined as a track leading from a main track. The switch, frog, and guardrails are essential parts of the turnout. The plaintiff contends that a turnout as used in the contract consists only of the departing track, whereas the defendant contends that the provision in the contract relating to installation and payment shows an intention of the parties to include the main track in the term "turnout." Usage and custom can be resorted to in order to explain but never to vary or contradict the term of a contract. 12 American Jurisprudence, 764, Section 237. The intent of the parties controls in the interpretation of the contract and the intention must be gathered from the language employed. *Blosser* v. *Enderlin,* 113 Ohio St., 121, 148 N. E., 393; *State, ex rel. Maher, Pros. Atty.,* v. *Baker,* 88 Ohio St., 165, 172, 102 N. E., 732; *National City Bank of Cleveland* v. *Citizens Building Co. of Cleveland,* 48 Ohio Law Abs., 325, 334; 9 Ohio Jurisprudence, 393, Section 170.

Several paragraphs of the contract require interpretation. Section 27, paragraph 3, provides that in computing lineal feet of track taken up or laid, etc., measurement is taken along the center line of the track, "from which deductions shall be made for turnouts, based on the actual distance from point of switch to heels of frog." In Section 27, paragraph 4, it is provided that the unit prices named in the contract for raising or throwing track shall include all expense of

handling material, etc., and the lineal feet of track raised or thrown shall be determined by actual measurement as noted above, "except that for turnouts payment shall be based on twice the track feet from point of switch to heel of frog." It will be noted that no mention is made in either of the two paragraphs of main track as distinguished from departing track. In paragraph 4 recognition is given to the additional work required in raising or throwing a turnout in the method of payment prescribed. Section 27, paragraph 5, provides: "The lump sum prices named in the contract for taking up and laying the various turnouts shall include all expense of skeletonizing, placing switch timber, frog, switch, switch stand, guardrails, ballast, and *other materials necessary to complete the item ready for use*, including changes to existing track and furnishing the necessary equipment." (Emphasis ours.) Thus, the lump sum prices include everything necessary to be done "to complete the item ready for use." The turnout would not be ready for use unless both main and departing tracks were installed. All these provisions indicate an intention to consider the turnout as a separate unit, and that a turnout embraces that part of the main track which extends between the point of switch and heel of frog, in determining the amount of compensation due. If any doubt remains it is dispelled by a consideration of the plans and specifications, and Section 22 of the contract which provides: "*Turnouts*. All turnouts shall be assembled and installed by the contractor according to the New York Central System standards. Where plans indicate turnouts are to be installed in existing tracks, the railroad inspectors will determine and direct the contractor whether to install the turnouts in place or construct them on the outside and place them with cranes." If the New York Central System

standards and the plans and specifications include the main track in the turnout, effect must be given to such provisions, regardless of any usage to the contrary. The designing engineer for the New York Central System, Mr. Whitehead, testified that a turnout consists of not only the departing track, but also the main track and the component parts essential to its use; and that the New York Central System standards with respect thereto are different from standards of other railroad systems. In specification No. 2, the plaintiff agreed to furnish labor, etc., in accordance with the following plans—Here appear a number of paragraphs, among which is paragraph "G," which provides as follows: "No. 10. Turnout and crossover, Plan No. E C E—10." Plan No. E C E—10, was introduced in evidence as plaintiff's exhibit D, which is a blue print of No. 10 turnout. The main track is shown to be an integral part of the turnout. This interpretation is supported by the last sentence in Section 22 quoted above, which provides that the turnout may be installed in place or constructed on the outside and placed with cranes. The evidence shows that when the turnout is assembled alongside the track and when ready for installation, the entire turnout is moved into place by using cranes. When thus installed the main track and the departing track and other essential parts are assembled as one unit. The plaintiff testified that he installed several turnouts in this manner. The same price is paid for this type of installation as when the turnout is installed in place. Under this provision of the contract, a turnout clearly consists of the main track and the departing track, together with other component parts essential to its use as one unit, and the work done is compensated for as one unit.

A consideration of the provisions of the contract,

together with the plans and specifications, leads this court to conclude, as did the trial court, that the intention of the parties has been definitely expressed in the contract to the effect that a turnout consists of a unit which embraces the departing track and the main track, and under the terms of the contract the turnouts are paid for as a unit. In computing compensation for work done on the main track, that portion of the main track which extends from point of switch to heel of frog is deducted from the lineal footage of the main track in accordance with the terms of the contract.

*Judgment affirmed.*

HORNBECK, P. J., and MILLER, J., concur.