## Dugan v. Dugan
*[Cite as 5 AOA 26]*

*Case No. C-890261*
*Hamilton County, (1st)*
*Decided July 18, 1990*

*Don C. Bolsinger, Esq., Bolsinger & Brinkman, 105 East Fourth Street, Suite 1520, Cincinnati, Ohio 45202, for Plaintiff-Appellee.*

*Robert O. Edington, Esq., Francine A. Wayman, and Holly S. Doan, Esq., Porter, Wright, Morris & Arthur, 250 East Fifth Street, Suite 2200, Cincinnati, Ohio 45202, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, Domestic Relations Division, the transcript of the proceedings, the briefs and the arguments of counsel.

This is an appeal from a judgment of the domestic relations court granting a Civ. R. 60(B) (5) motion for relief from the terms of a separation agreement which was attached to and incorporated in a divorce decree filed on April 7, 1975.

It appears from the record that the appellant, Francis Dugan, and the appellee, Judith Ann Dugan, signed the separation agreement in February 1975, after nine months of negotiation in which both parties were represented by counsel. The terms of the agreement provided that the appellant was to take custody of the parties' six children, who, at the time of the decree, ranged from ages eight to sixteen. Furthermore, the agreement provided that the appellant would pay the appellee a total of $200,000.16 in alimony over a period of ten years in 122 installments,

the first installment in the sum of $30,000 with monthly payments thereafter in the amount of $1,404.95. In addition to a division of assets, the agreement obligated the appellant to accept conveyance of the marital residence and assume the attendant $8,000 mortgage. The appellant was thereafter obligated to execute in the appellee's favor a $35,000 mortgage on the residence, which, by language in the agreement, was "payable without interest, when the real estate is sold *** to a bonafide purchaser."[1] Moreover, the separation agreement contained the following language under subheadings 9 and 10 entitled, respectively, "Modification of Agreement" and "Full Understanding"

"This SEPARATION AGREEMENT shall not be altered, changed or modified unless and except it be done in writing and signed by both Parties.

"Each Party fully understands all of the terms herein set forth, and each agrees that all of the said terms represent and constitute the entire understanding between them, and that each has read this SEPARATION AGREEMENT with the advice of legal counsel and find the same to be in accordance with his or her understanding."

The record indicates that the appellant accepted conveyance of the marital residence and executed the required mortgage in the appellee's favor. Furthermore, he has paid all the alimony which he was obligated to pay the appellee under the separation agreement, and raised all the children until their emancipation. He has not, however, chosen to convey the marital residence to a bona fide purchaser.

On July 17, 1988, the appellee filed a motion, pursuant to Civ. R. 60(B) (5), requesting relief from the language in the separation agreement obligating the appellant to discharge her $35,000 mortgage on the marital residence only when it is sold to a bona fide purchaser. She contended that this term operated unjustly in view of the thirteen years which had elapsed without the occurrence of the triggering event. Following a hearing in August 1988, a referee decided in the appellee's favor. Specifically, the referee found that the unilateral control granted to the appellant over the triggering event constituted an "inequitable denial of the appellee's property right" which was never actually intended by the parties and constituted a basis for relief under Civ. R. 60(B) (5). The trial court sustained the referee's report in April 1989 and ordered the appellant to either replace the present no-inter-

est mortgage with a commercial mortgage, or pay the sum of $35,000 to the appellee by November 21, 1988, with interest at 10% for any unpaid balance after that date.

The appellant sets forth three assignments of error for our review:

"(1) The lower court erred in finding jurisdiction of the appellee's motion since it seeks to modify the property settlement contained in the separation agreement;

"(2) The lower court erred by determining the parties' intent to be other than the express terms of the separation agreement; and

"(3) The lower court erred by treating the appellee's motion for relief under Civ. R. 60(B)(5) rather than under Civ. R. 60(B)(1), since the relief prayed for was upon the basis of mistake, inadvertence, surprise or negligence."

In *Wolfe v. Wolfe* (1976), 46 Ohio St. 2d 399, 350 N.E. 2d 413, the Ohio Supreme Court upheld the authority of the trial court to modify alimony terms contained in an agreement incorporated into a decree of divorce. However, the court observed at length that courts generally do not have power to modify a property settlement or a decree incorporating it. Id. at 416-417, 350 N.E. 2d at 924-25. Indeed, the court held that where alimony is "not solely for support but is in settlement of property rights," then even alimony is not subject to modification. Id. at 418, 350 N.E.2d at 425. See, also, *St. Clair v. St. Clair* (1983), 9 Ohio App. 3d 195, 459 N.E. 2d 243; 48 Ohio Jurisprudence 3d (1983) 373, Family Law, Section 1185.

The domestic relations referee in the case sub judice acknowledged the principle set forth in Wolfe that property settlements are not subject to modification. Moreover, the referee found that the $35,000 mortgage was intended by the parties to be in the nature of a property settlement, not alimony. However, the referee distinguished the appellee's motion for relief as one not seeking "modification of the settlement itself," but, rather, striking at the "unfairness and incompleteness" of the triggering mechanism, thus invoking the inherent power of the court to grant relief.

Our understanding of the verb "modify" agrees essentially with that found in Black's Law Dictionary: "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit; reduce." Black's Law Dictionary (Fifth Ed. 1979) 905. Thus, "modification" is "[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of

them, but leaves the general purpose and effect of the subject-matter intact." *Id.*

The clear consequence of the trial court's action below was to strike from the separation agreement express terms granting the appellant an interest-free mortgage and the right to avoid an obligation to discharge the mortgage until he chose to sell the marital residence to a bonafide purchaser. In lieu of these terms, the trial court placed the appellant under an immediate obligation either to obtain another mortgage requiring interest, or, if he chose, to discharge the mortgage by a date certain, subject to a fixed rate of interest for any unpaid balance. We find it beyond cavil that the rights and duties of the parties were thus modified from what they had previously been under the separation agreement.

We are further convinced that the relief granted herein cannot be countenanced as something other than a modification upon the theory that the trial court was merely giving effect to the parties' original intent, or interpreting with hindsight, as well as by custom and usage, what the parties might have intended in light of subsequent events. Such a rationale impermissibly departs from general principles disfavoring the use of parol evidence to interpret contracts which are not ambiguous on their face. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus; 4 Williston on Contracts (3 Ed. 1961), 532-533, Section 610B.

Moreover, the express provisions of subheadings 9 and 10 of the separation agreement, which have previously been quoted, cannot simply be ignored. See In re Wise (1988), 46 Ohio App. 3d 82, 545 N.E. 2d 1314.

Finally, it is well settled that the intent of the parties to a contract is "presumed to reside in the language they chose to employ in their agreement," *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St. 3d, 130, 132, 509 N.E.2d 411, and that the terms of the separation agreement, like any contract, must be judged in the context of the entire agreement among the parties. see, generally, *Third Nat. Bank v. Laidlaw* (1926), 86 Ohio St. 91, 98 N.E. 1015. Thus any construction of the separation agreement must give due weight to the allocation of responsibilities as well as rights. In this regard, it cannot be overlooked that the appellant, while granted an interest-free mortgage in the marital residence, also accepted the obligation to maintain custody of the couple's six children. Considering all these factors, we perceive no basis in law or equity for disturbing the

original terms agreed to by the parties with full representation of counsel.[2]

We find, therefore, that the appellant's first two assignments of error are well taken. We turn next to the third assignment of error regarding the appropriateness of relief under Civ.R. 60(B)(5).

In a prior case, involving a dissolution of marriage, this court upheld a trial court's authority to grant relief under Civ. R. 60(B) (5) upon a showing of fraudulent nondisclosure amounting to statutory noncompliance. In re Murphy (1983), 10 Ohio App. 3d 134, 461 N.E.2d 910. As we explained in Murphy, the availability of relief under clause (5) of Civ. R. 60(B) was grounded on statutory noncompliance; in such circumstance, the movant was not bound by the one-year deadline of clause (3), which deals specifically with fraud as a reason for relief. Id. at 138, fn.6; 461 N.E.2d at 915, fn.6. As we further explained in Murphy, other cases not involving statutory noncompliance which invoked the grounds for relief addressed in clauses (1), (2) and (3) of Civ. R. 60(B) would be held to the one-year deadline applicable to such claims. Id.

Clearly the basis for the appellee's motion is encompassed by the grounds set forth in clause (1) of Civ. R. 60(B): "mistake, inadvertence, surprise or excusable neglect."[3] See Wise, supra, at 84, 545 N.E.2d at 1316-17. We conclude, therefore, that the one-year filing deadline applied, and that the motion was not filed in a timely manner.

Based on the foregoing, we hold that the lower court lacked jurisdiction to modify the separation agreement herein under the guise of Civ. R. 60(B) (5), and that relief under Civ. R. 60(B) should, in any event, have been denied due to the untimeliness of the appellee's motion. The judgment below is therefore reversed and this case is remanded to the lower court for the entry of an order consistent with the terms of this decision.

*Judgment reversed and cause remanded.*

UTZ, P.J., HILDEBRANDT and GORMAN, J.J.

---

[1] At the hearing before the referee, the appellant maintained that the $35,000 was not intended to be in payment of the appellee's equitable interest in the real estate but, rather, a part of the entire property settlement. T.d. 22 (pp. 12-13 of the transcript of the proceedings before Referee Martin McMullen).

[2] We note that the construction urged by the appellee was, in effect, to fix the triggering event for discharge of the mortgage as the emancipation of the parties' youngest child. While such a triggering event is not uncommon, language to such effect is conspicuously absent from the separation agreement. Where, as here, an agreement is drafted by counsel, and there is an obvious omission of familiar language which, if used, would have sustained the construction urged by one of the parties, "the logical presumption is that the omission was intentional." *Walter v. Pugh* (1945), 30 Ohio Ops. 561.

[3] Appellee, in her brief, characterized this case as one "where the parties *neglected* to precisely state the triggering event." (Emphasis added.)