OPINION
Plaintiffs-appellants Steve and Mary Webster appeal the December 16, 1999, Judgment Entry of the Richland County Court of Common Pleas granting Summary Judgment in favor of defendant-appellee Koch Industries, Inc.
 STATEMENT OF THE FACTS AND CASE
Plaintiffs-appellants Steve and Mary Webster [hereinafter Websters] leased a building located at 56 East Main Street, Lexington, Ohio, from defendant-appellee Koch Industries, Inc. [hereinafter Koch]. On February 24, 1997, the Websters and Koch executed a contract entitled "Contract Granting Right of First Refusal" which was drafted exclusively by Koch. The contract pertained to the property the Websters had leased from Koch. This land had previously been used by Koch Oil Company as a storage facility. In a letter dated September 8, 1998, Koch offered to sell the property to the Websters, pursuant to the contract, for $85,000.00. According to the letter, the Websters had ten days to accept the offer. The offered terms of the sale required that the Websters take the property as is, pay an earnest money deposit of $8,000.00 and close the purchase within 60 days. More than a month later, in a letter dated October 13, 1998, the Websters rejected the offer through their attorney. About December, 1998, Koch sold the property to Dennis Peterson. When the Websters learned of the potential sale to Peterson from Koch, they sent Koch a check for $5,000.00 and a signed contract on December 10, 1998. On December 16, 1998, the Websters received their check back from Koch with a letter which stated that their acceptance of the deal had come too late. On February 1, 1999, the Websters brought suit against Koch and Peterson, seeking to gain title to the property from Peterson or to have Koch pay them $250,000.00 in damages. On November 1, 1999, Koch filed a Motion for Summary Judgment. On November 9, 1999, the Websters filed a Motion for Summary Judgment. Thereafter, both parties filed motions contra to each other's Motions for Summary Judgment. On December 16, 1999, the trial court entered summary judgment in favor of Koch and Peterson and against the Websters. Further, the trial court overruled the Websters' Motion for Summary Judgment. It is from the December 16, 1999, Judgment Entry granting Summary Judgment in favor of Koch, that appellants, the Websters, prosecute this appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED IN HOLDING THAT KOCH WAS ENTITLED TO JUDGMENT IN [SIC] MATTER OF LAW.
 A. THE TRIAL COURT ERRED IN HOLDING THAT THE WEBSTERS' REJECTION OF KOCH'S "RIGHT OF FIRST OPPORTUNITY TO PURCHASE" EXTINGUISHED THEIR "RIGHT OF FIRST REFUSAL."
 B. THE TRIAL COURT ERRED IN HOLDING THAT KOCH ULTIMATELY SOLD THE PROPERTY TO PETERSON UNDER THE SAME TERMS AS WERE ORIGINALLY OFFERED TO THE WEBSTERS.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, 674 N.E.2d 1164 (citing Dresher v. Burt (1966), 75 Ohio St.3d 280,662 N.E.2d 264). It is based upon this standard we review the Websters' sole assignment of error. The Websters' assignment of error claims that summary judgment was granted in error. This assignment of error presents two issues for our analysis. The first issue is whether the trial court erred when it held that the Websters' rejection of Koch's "right to first opportunity to purchase" extinguished their "right of first refusal." The second issue is whether the trial court erred when it held that Koch sold the property to Peterson under the same terms as originally offered to the Websters. Each of these issues will be addressed in turn. Appellants, the Websters, contend that the contract grants them two rights, a "first look right to buy" and a "right of first refusal." The Websters argue that the rejection of one of those rights did not extinguish the other right. The contract in question stated the following in pertinent part:
CONTRACT GRANTING RIGHT OF FIRST REFUSAL
 . . . Steve Webster and Mary Webster (the "Websters"), husband and wife, are interested in having a first-look right to buy the Property and Koch agrees to grant the Websters a certain right of first refusal as herein expressly set forth ("Right") for such. . . . The parties agree as follows: If Koch receives a bona fide offer from an unaffiliated third person or entity to buy the Property, Koch shall first offer the Property to the Websters for the price and on the terms of that third person or entity offer if Koch otherwise intends to accept the offer. The Websters shall have ten (10) days receipt of that from [sic] notice from Koch to Websters in which to accept it, if at all.
If the Websters want to match that offer, they must deliver that acceptance in writing to Koch within the ten (10) day time limit along with $5,000.00 earnest money. If the Websters do not respond within the ten (10) day time limit or reject such offer, the Right and this contract shall expire and thereafter be of no further force or effect.
If Koch plans to make an offer to sell the Property to an unaffiliated third person or entity, Koch shall first offer the Property to the Websters for the price and on the terms of that intended offer. The Websters shall have ten (10) days from receipt of notice, by Koch to Websters of such offer in which to accept it, if at all.
If the Websters want to accept that offer, they must deliver that acceptance in writing to Koch within the ten (10) day time limit along with $5,000.00 earnest money. If the Websters do not respond within the ten (10) day time limit or reject such offer, the Right and this contract shall expire and thereafter be of no further force or effect, provided, however if in offering the Property for sale to any unaffiliated third person or entity, after expirary or [sic] the ten (10) day period without the Webster's acceptance and Koch modifies that offer in any way changed to that last presented to the Websters, then [sic] that modified offer must first be presented to the Webster [sic] under the procedures of this contract stated above.
The trial court initially agreed that the contract gave the Websters two rights: 1) the right to match any bona fide offer for the real estate that appellee proposed to accept; and 2) the first chance to buy on terms upon which appellee proposed to offer the real estate for sale to others. The trial court, based upon the language of the contract, found that when appellant rejected Koch's September 8, 1998, offer, presumably made pursuant to the Websters' contractual right of first chance to purchase upon terms offered to the public or a third party, the right to match any bona fide offer was extinguished as well. The only remaining limitation under the contract was that Koch could not sell the property to a third party on more favorable terms then the offer rejected by the Websters. We agree. "The agreement of the parties to a written agreement is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the expressed terms thereof." Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212 citing (Blosser v. Enderlin (1925), 113 Ohio St. 121). While the Websters correctly state that ambiguous contracts are to be construed against the drafter, we find the language of the contract sub judice is not ambiguous. The contract in question was captioned "Contract Granting Right of First Refusal." The contract states that, if Koch planned to offer the property for sale to a third party, Koch was required to offer that property to the Websters for the price and terms of the intended offer. If appellants wished to accept the offer, appellants were required to deliver a written acceptance within ten days along with $5,000.00 earnest money. The contract declared that "[i]f the Websters [appellants] do not respond within the ten (10) day time limit or reject such offer, the Right in this contract shall expire and thereafter be of no further force or effect, provided, however if in offering the Property for sale to another unaffiliated third person or entity, after expirary or [sic] the ten (10) day period without the Webster's [sic] acceptance and Koch modifies that offer in any way changed to that last presented to the Websters, then that modified offer must first be presented to the Webster [sic] under the procedures of this contract stated above." Contract, para. 6. In December, 1997, a realty company, representing Koch, placed a "For Sale" sign on the property. Subsequently, pursuant to the contract, Koch sent the Websters a letter dated September 8, 1998, offering to sell the property for $85,000.00. The offer gave the Websters 10 days to accept the offer and provide an $8,000.00 earnest money deposit, with a closing to follow within 60 days. The Websters did not accept the offer within 10 days, during which, the Websters, by the terms of the contract, had the right to accept or reject the offer, and after which, the Websters lost their right to accept the offer. Subsequently, the Websters overtly rejected the offer by letter sent through their counsel, dated October 13, 1998. The letter stated: In a letter dated September 8, 1998, Koch Materials Company offered to sell property in Lexington, Ohio, to our clients, Steve and Mary Webster, for $85,000.00. The Websters are interested in purchasing the property, but certainly not subject to such unfair and one-sided terms. Even the untrained observer can see that this property is still in need of environmental remediation. Besides runoff and ground contamination, oil remains in catch basins and old pipes are evident. If these problems have been set forth in an audit and at some point are proven to have been resolved in compliance with EPA standards, the Websters would welcome the opportunity to negotiate a purchase. Otherwise, the Websters look forward to being given the opportunity pursuant to the Right of First Refusal to match a "modified" offer.
The letter flatly rejected the offered price and terms indicating only an interest to negotiate a purchase at a future time and "opportunity pursuant to the Right of First Refusal to match a "modified offer". We find that under the terms of the contract, the Websters' rejection of the offer by not responding within 10 days, terminated the contract, with one exception. At that point, the only contractual right remaining to the Websters pursuant to the contract, was the right to be presented with any modified offer. This interpretation is consistent with the understanding expressed in Websters' counsel's October 13, 1998, letter. The letter expressed an understanding that appellants continued to have the contractual right to match modified offers. That letter also expressed that the Websters would welcome further negotiations if the environmental problems were set forth in an audit and were proven to have been resolved in compliance with EPA standards. "Negotiating a purchase" does not reflect a belief that Koch continued to have a duty to offer the property to appellants at the terms and conditions as offered to a third party, if those terms and conditions are the same as the terms and conditions already rejected by the Websters. This brings us to the Websters' second argument: the Websters claim the trial court erred in holding that Koch sold the property to Peterson under the same terms as were previously offered to the Websters. The Websters argue that regardless of the outcome of their first argument, they had the right to consider "modified offers". The Websters assert that the contract entered into between Koch and Peterson for the purchase of the property was different than the offer presented to them. Specifically, the Websters allege that the two offers involved two different closing dates and that the "modified" contract included a "no further action letter" from an evironmental consultant. The contract offered to the Websters included a term by which the closing was required to be completed within 60 days of acceptance. While the Websters assert that Peterson closed on December 14, 1998, the Websters argue that they would have been required to close September 22, 1998. However, while the Websters assert that the closing dates were different, the important factor was whether Peterson was required to close within 60 days of acceptance. In an affidavit, Brent Stewart, a Koch employee responsible for marketing the property, stated that the property was sold to Dennis Peterson under the same exact terms as offered to the Websters in the September 8, 1998, letter. The Websters have presented no evidence nor specific facts to show when Peterson accepted Koch's offer or that the closing was not required to have been concluded within 60 days of acceptance. As to the environmental consultant's letter, such a letter was not a term of the contract. The property was offered "as is" to the Websters and the Websters do not contend that the property was offered to Peterson other than "as is". At most, Peterson had more information available to him when he made his decision whether to purchase the property than was available to the Websters but such an evaluation of the property was not required by the contract. Further, the Websters' counsel's October 13, 1998, letter acknowledged the potential environmental problems and stated that the Websters would be interested in negotiating a purchase should apparent environmental problems be "proven to have been resolved in compliance with EPA standards." A letter from the environmental consultants, dated October 6, 1998, asserted that they "[believed] that no further action is warranted for this property and [do] not have any plans to further investigate or remediate this site." The date of this letter is just seven days before appellants' counsel's letter dated October 13, 1998, which asserted that "[e]ven the untrained observer can see that this property is still in need of environmental remediation." Further, in a letter dated October 28, 1998, the environmental consultants acknowledged to Koch that the Ohio Environmental Protection Agency [hereinafter OEPA] had not responded to their assertion that the property no longer required remediation and that the consultants "cannot predict what actions, if any, the OPEA may require for this property in the future. . . ." In that these letters from the environmental consultants are so close in time to the Websters' letter which states that the need for remediation was so apparent and, further, did not represent that the OPEA was satisfied with remediation, we cannot find that the letter would have influenced the Websters' decision. The letters from the consultants did not prove that the environmental problems had been resolved, as was stated as a requirement before the Websters would be interested in negotiating a purchase. Lastly, appellants contend that Peterson and Koch engaged in negotiation for the sale of the property as early as January 26, 1998. The Websters point to a letter, dated January 26, 1998, which indicated that Peterson had made an offer on the property and the offer had been submitted to Koch by their realty service. The letter does not provide specifics of the offer nor indicate that Koch accepted the offer. We do not find this factor to be relevant to the issues raised by appellant in their assignment of error. Therefore, we conclude that no genuine issue of material fact existed as to whether the Websters were offered their rights pursuant to the contract. Therefore, Koch was entitled to summary judgment. Appellants' assignment of error is overruled.
The judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J. Hoffman, P.J. and Milligan, V.J. concur