[Cite as *United Ohio Ins. Co. v. Brooks*, 2012-Ohio-1469.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

UNITED OHIO INSURANCE
COMPANY,

     PLAINTIFF-APPELLEE,                CASE NO. 12-11-04

     v.

KASEY BROOKS,

     DEFENDANT-APPELLANT,

     v.                             O P I N I O N

KALOB DITTO, ET AL.,

     DEFENDANTS-APPELLEES.

Appeal from Putnam County Common Pleas Court
Trial Court No. 10 CV 20

Judgment Reversed and Cause Remanded

Date of Decision: April 2, 2012

APPEARANCES:

     *T. Blain Brock and Aaron L. Bensinger* for Appellant

     *Susan S.R. Petro* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Kasey Brooks ("Brooks"), appeals the judgment of the Common Pleas Court of Putnam County, Ohio, overruling Brooks' motion for summary judgment and granting summary judgment in favor of Intervening Plaintiff-appellee, United Ohio Insurance Company ("UOIC").

{¶2} The facts relevant to this appeal are as follows. On February 4, 2010, Brooks filed a complaint in the Putnam County Common Pleas Court against three defendants, Kalob Ditto ("Kalob"), Lorie Ditto ("Lorie"), and Jerry Burgei ("Jerry"). Brooks alleged that in March of 2009, Kalob, while operating an all-terrain vehicle ("ATV"), struck Brooks, causing her to be injured, and then left the scene of the accident without informing anyone that Brooks was injured. Brooks alleged that Kalob's negligence caused her injuries and that Lorie, Kalob's mother, and Jerry Burgei, Lorie's boyfriend, were also liable for her injuries because they owned the ATV and negligently entrusted it to Kalob.

{¶3} At the time of the ATV incident, Kalob and Lorie lived with Jerry at 13141 State Route 364 in Cloverdale, Ohio. Also at the time of the ATV incident, Jerry had two policies of insurance with UOIC, a homeowner's policy and a personal automobile policy.[1] On April 1, 2010, UOIC filed a motion to intervene as a party plaintiff because of the interest it potentially had in the case due to

---

[1] Lorie was also listed as a named insured on the personal automobile policy.

Jerry's insurance policies. The trial court granted this motion on April 29, 2010. On May 17, 2010, UOIC filed its complaint for declaratory judgment as an intervening plaintiff, requesting a determination that neither of the policies issued to Jerry by it provided coverage for the ATV incident and/or required UOIC to defend Jerry, Lorie, and/or Kalob.

{¶4} On June 24, 2010, UOIC filed a motion for summary judgment. In this motion, UOIC contended that Kalob was not an insured person for purposes of its homeowner's policy with Jerry because Kalob and Jerry were not related by blood or marriage. It further asserted that the ATV incident was not covered by Jerry's personal automobile policy because the policy excluded ATV's from coverage.

{¶5} On August 16, 2010, Brooks filed a response in opposition to this motion and a motion for summary judgment in her favor against UOIC. In her response in opposition and motion for summary judgment in her favor, Brooks did not raise any issues as to the personal automobile policy. Instead, Brooks alleged that Kalob was an insured under the homeowner's policy because he was related by blood to Jerry. In support of this contention, Brooks submitted the affidavit and genealogy report of Ruth Wilhelm, a genealogist with the Putnam County District Library for the last several years. Wilhelm averred that she conducted genealogical research into the ancestry of Jerry and Lorie and found that Jerry and

Lorie have the same great-great-great grandparents, to-wit: Joseph Siefker and Francisca Mary Feldhake/Felhag. UOIC filed a motion to strike Wilhelm's affidavit on August 30, 2010, alleging it failed to comply with the requirements of Civ.R. 56 because it was not based on personal knowledge, consisted of hearsay, and that she was not competent to testify to the facts asserted in the affidavit. On that same day, UOIC filed its response in opposition to Brooks' motion for summary judgment. In this response, UOIC contended that even if Wilhelm's affidavit constituted evidence of a familial relationship between Jerry and Kalob, the relationship was too far removed to constitute "related" as that term was used in the homeowner's policy. On September 3, 2010, UOIC filed its reply to Brooks' response in opposition to its motion for summary judgment, asserting essentially the same contentions put forth in its opposition to Brooks' motion for summary judgment.

{¶6} On September 7, 2010, Brooks filed a notice to supplement the record with a second affidavit of Ruth Wilhelm. In this affidavit, Wilhelm further explained her knowledge, training, and experience in researching genealogy and provided specific details about the sources she used to prepare the genealogy reports of Jerry and Lorie along with an averment that these sources were authentic and maintained in the forms and locations where such authentic records should be. Attached to this affidavit were copies of a number of sources that

-4-

Wilhelm used in this regard, including health department birth and death records, probate records, U.S. Census reports, baptismal records from the Toledo Catholic diocese, and newspaper obituaries. UOIC did not file a motion to strike this affidavit.[2]

{¶7} The trial court did not strike either of Wilhelm's affidavits. However, on January 3, 2011, the trial court found that the familial relationship between Jerry and Kalob, which amounted to eleven degrees of separation of kinship, was too remote to be considered "related" as that term was used in the homeowner's policy. Consequently, the trial court found that UOIC's policies did not cover the ATV incident, granted summary judgment in favor of UOIC, and overruled Brooks' motion for summary judgment.[3] This appeal followed, and Brooks now asserts one assignment of error for our review.[4]

> **THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLEE, KALOB DITTO, WAS NOT COVERED UNDER UNITED OHIO INSURANCE COMPANY POLICY NO. SHO2747222.[5]**

{¶8} An appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning &*

---

[2] In its brief to this Court, UOIC does not challenge that Jerry and Kalob share a common blood ancestry to the eleventh degree.

[3] The trial court later certified this entry as having no just cause for delay pursuant to Civ.R. 54(B).

[4] Kalob, Lorie, and Jerry did not file any responses in opposition to either UOIC's or Brooks' motions for summary judgment nor did any of them file their own motions for summary judgment. In addition, Kalob, Lorie, and Jerry did not file any notices of appeal or appellate briefs in this matter.

[5] The only policy at issue in this appeal is the homeowner's policy, as Brooks has not raised any issue concerning the personal automobile policy.

*Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991; see, also, *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish that there are no genuine issues of material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, paragraph three of the syllabus, 1995-Ohio-286, 653 N.E.2d 1196. Additionally, Civ.R.56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶9} Neither UOIC nor Brooks disputes that the language in the homeowner's policy, Policy No. SHO2747222, potentially provides coverage for the ATV incident in that this policy contained an endorsement for recreational vehicles such as the ATV operated by Kalob at the time of the incident and that the endorsement covered damages for bodily injury for which an "insured" were to

become legally responsible because of an accident arising out of the operation or use of a recreational motor vehicle. They also do not dispute that Jerry is the named insured in that policy, also referred to as "you" throughout the policy, including the recreational vehicle endorsement. In addition, they do not dispute that the policy's recreational vehicle endorsement defined "insureds" as "**you** or any **family member** for the ownership, maintenance, or use of any **recreational motor vehicle**[,]" and defined the term "family member" as "a person related to you by blood, marriage, or adoption who is a resident of your household." (Emphasis in original.)

{¶10} Lastly, they do not dispute that Kalob, Jerry, and Lorie all lived together at the time of the ATV incident, that Jerry and Lorie were not married at the time, that Kalob was not Jerry's biological or adopted child at that time, and that Wilhelm's genealogical report shows that Jerry and Lorie share a set of great-great-great grandparents, which would be Kalob's great-great-great-great grandparents, creating a kinship between Jerry and Kalob of eleven degrees of separation.

{¶11} The *only* point of contention between the parties is whether Kalob is a family member of Jerry's as that term is defined in the policy, i.e. whether Kalob is *related* to Jerry by blood. More specifically, Brooks contends that the policy's clear and unambiguous language provides coverage for Kalob because he is

related to Jerry by blood, no matter how far removed that kinship is. Brooks further contends that Jerry specifically obtained the recreational vehicle endorsement, knowing that he, Lorie, and Kalob would be using the ATV, and that he wanted to cover those relatives living in his home.

{¶12} To the contrary, UOIC maintains that the intent of the contracting parties, UOIC and Jerry, in covering those *related* to Jerry by blood, marriage, or adoption was not to include someone so far removed in kinship as Kalob. As evidence of this intent, UOIC relies on the fact that (1) Jerry did not marry Lorie or adopt Kalob, (2) Jerry, Lorie, and Kalob did not realize they shared a common ancestry until Wilhelm's report, and (3) Lorie was specifically named as an insured in the personal automobile policy but was not a named insured in the homeowner's policy. Further, UOIC contends that a common dictionary definition of the word "related" is so broad that it encompasses anyone with a common ancestry and that many individuals could be related to some remote degree in any given community. Thus, it asserts that to interpret the word "related" as broadly as Brooks does would lead to manifestly absurd results with potentially no limitations.

{¶13} The law concerning contract interpretation, including insurance policies, is well-established.

**When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement.** *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* **(1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing** *Employers' Liab. Assur. Corp. v. Roehm* **(1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.** *Kelly v. Med. Life Ins. Co.* **(1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy.** *Alexander v. Buckeye Pipe Line Co.* **(1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.** *Id.* **As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.** *Gulf Ins. Co. v. Burns Motors, Inc.* **(Tex.2000), 22 S.W.3d 417, 423.**

**On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.** *Shifrin v. Forest City Enterprises, Inc.* **(1992), 64 Ohio St.3d 635, 597 N.E.2d 499. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.** *Id.***;** *Blosser v. Enderlin* **(1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]").**

**It is generally the role of the finder of fact to resolve ambiguity. See, e.g.,** *Davis v. Loopco Industries, Inc.* **(1993), 66 Ohio St.3d 64, 609 N.E.2d 144. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party.** *Cent. Realty Co. v. Clutter* **(1980), 62 Ohio St.2d 411, 413, 16 O.O.3d 441, 406 N.E.2d 515. In the insurance context, the insurer customarily**

> **drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured.** *King v. Nationwide Ins. Co.* **(1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.**
>
> **There are limitations to the preceding rule. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy."** *Morfoot v. Stake* **(1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus. Likewise, where "the plaintiff is not a party to [the] contract of insurance \* \* \*, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party."** *Cook v. Kozell* **(1964), 176 Ohio St. 332, 336, 27 O.O.2d 275, 199 N.E.2d 566.**

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶¶ 11-14.

{¶14} The language at issue in this policy is: "a person related to you by blood \* \* \* who is a resident of your household." The term "related" is not defined in the insurance policy. Merriam-Webster's Collegiate Dictionary defines "related" as "connected by common ancestry or sometimes by marriage." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1050 (11th ed. 2009). In addition, the term "relative" is defined in Black's Law Dictionary as "[a] person connected with another by blood or affinity; a person who is kin with another[,]" and "blood relative" is defined as "[o]ne who shares an ancestor with another."

BLACK'S LAW DICTIONARY 1402 (9th ed. 2009). When applying any of these plain and ordinary meanings, Jerry and Kalob are clearly related by blood.

{¶15} Nevertheless, UOIC contends that the blood relationship between Jerry and Kalob is so remote that it would lead to a manifestly absurd result because some remote relation might be found to exist among most of the people in a particular community and that this was not the intent of the parties to the insurance contract, UOIC and Jerry.

{¶16} However, as noted, this Court is required to presume that the intent of the parties is reflected in the language used in the policy, and when the language of the written contract is clear, we are not permitted to look any further than the writing itself to find the intent of the parties. Thus, given the previously outlined evidence in this case, which is uncontroverted, and the clear language of the contract, we are compelled to conclude that Kalob is related to Jerry by blood.

{¶17} Notably, UOIC fails to provide any other reasonable interpretation of the term "related." Nowhere in its arguments as to the meaning of this term does UOIC offer an alternative definition or to otherwise provide any information as to what the intent of UOIC and/or Jerry was in regards to this provision, arguing only that they did not intend to insure Kalob.[6] If this Court was not to apply the

---

[6] Neither UOIC or Brooks provided any direct evidence by way of affidavit or deposition of Jerry's intent when he obtained the endorsement in his homeowner's policy for recreational vehicles. Rather, both rely on the surrounding circumstances to present their respective cases of his intent.

commonly understood, plain and ordinary meaning of the word "related" as provided by Merriam-Webster's and Black's and elected to limit its meaning as UOIC urges us to do, then we would have to create what could only be considered an arbitrary line in the genealogical sand. Yet, UOIC does not even suggest where that line might be. We find that to create such a line is beyond our judicial authority and would interfere with the rights of the parties to enter into a lawful contract.

{¶18} We note that UOIC is concerned that applying a broad definition of the word "related" could lead to manifestly absurd results because then anyone related to Jerry by blood, no matter how remote, could be considered an insured and that this was certainly not the intention of either UOIC or Jerry. However, we find that this concern is misplaced. UOIC overlooks the remaining portion of the definition of "family member", to-wit: "who is a resident of your household." This language limits the "manifestly absurd results" of which UOIC complains by restricting it only to those who reside with Jerry. In addition, the parties, particularly the drafting party, UOIC, were free to choose whatever language they wanted. This would include limiting the degree of blood relationship to as close or as remote as the parties desired. They chose not to limit the degree of consanguinity. This failure does not render the otherwise unambiguous term "related" somehow subject to differing interpretations.

{¶19} For all of these reasons, we find that the trial court erred in granting summary judgment in favor of UOIC and in overruling Brooks' motion for summary judgment in her favor. Therefore, the assignment of error is sustained, the judgment of the Common Pleas Court of Putnam County, Ohio, is reversed, and the cause remanded.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, J., and WILLAMOWSKI, J., concur.**

**/jlr**