[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] This appeal involves only Fidelity and Deposit Company of Maryland.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas court summary judgment in favor of Water Works Supplies, Inc. (WWS), the plaintiff below and the appellee herein. Fidelity and Deposit Company of Maryland (FD), the defendant below and the appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
"The common pleas court erred by granting WWS's motion for summary judgment in direct conflict with the law of ohio as declared in the supreme court's landmark decision in Westfield Ins. Co. v. Galatis and the law of the case doctrine."
SECOND ASSIGNMENT OF ERROR:
"The common pleas court erred by overruling FD's motion for summary judgment in direct conflict with the law of ohio as declared in the supreme court's landmark decision in Westfield Ins. Co. v. Galatis and the law of the case doctrine."
THIRD ASSIGNMENT OF ERROR:
"The common pleas court erred by entering summary judgment against fd in violation of the plain text of civil rule 56(c) and (e)."
FOURTH ASSIGNMENT OF ERROR:
"The common pleas court erred by awarding prejudgment interest on wws's payment bond claim in violation of R.C. 1343.03 and contrary to the october 30, 2001 judgment against grooms."
 {¶ 2} This case is on appeal for the second time, following a remand to the trial court after the Ohio Supreme Court declined to exercise jurisdiction. See 99 Ohio St.3d 1469, 2003-Ohio-3669, 791 N.E.2d 984. WWS asserts a right to collect under a payment bond that FD issued on behalf of Grooms Construction, Inc. for a construction project. In prior proceedings, the trial court granted FD summary judgment, essentially concluding that WWS impaired FD's suretyship status by cashing checks made jointly payable to WWS and to other suppliers on the construction project and not demanding immediate payment from the check proceeds. On appeal, FD asserted that the trial court properly granted it summary judgment. FD argued that the "joint check rule" and R.C. 1303.39(B) barred WWS's claim and that the trial court properly determined that WWS impaired its suretyship status. We reversed the trial court's judgment, however, and concluded that the payment bond contract explicitly provided that FD waived the defense. See Water Works Supplies, Inc. v. GroomsConstruction Co., Inc., Highland App. No. 01CA18, 2003-Ohio-1527. Additionally, in light of the plain language of the payment bond, we refused to apply the joint check rule or R.C. 1303.39(B). See id., Entry on Application to Reconsider. Additional facts may be found in our prior decisions.
 {¶ 3} On remand, FD filed an answer and declaratory judgment counterclaim and asserted, inter alia, the following defenses: (1) that under R.C. 1303.39(B), any obligation owed to WWS was discharged; and (2) that the joint check rule bars WWS's recovery. Its declaratory judgment counterclaim requested the court to declare that the payment bond did not provide coverage to WWS.
 {¶ 4} Both parties filed summary judgment motions. WWS argued that under the law of the case doctrine, it was entitled to judgment as a matter of law. FD asserted that numerous factual issues remained disputed and that under R.C. 1303.39 and the joint check rule, it was entitled to judgment as a matter of law. FD further asserted that an intervening decision from the Ohio Supreme Court, Westfield Ins. Co. V.Galatis, 100 Ohio St.3d 216, 2003-Ohio-6267, 797 N.E.2d 1256, rendered the law of the case doctrine inapplicable.
 {¶ 5} The trial court determined that the material, undisputed facts showed that under the law of the case doctrine, WWS was entitled to judgment as a matter of law. The court noted that the parties did not dispute the following facts: (1) WWS supplied materials on the bonded project; (2) FD issued the payment bond and was the surety under the payment bond; and (3) Grooms, the principal under the payment bond, failed to pay WWS and in October of 2001, WWS obtained a judgment against Grooms for $337,540.71, plus interest at the rate of 1 ½ per month. The court thus issued a judgment in WWS's favor for $337,540.71, plus interest at the rate of 1 frac12; per month. FD timely appealed the court's judgment.
 I {¶ 6} Because FD's first three assignments of error address the trial court's summary judgment decision, we consider them together.
 A {¶ 7} Initially, we note that when reviewing a trial court's summary judgment decision, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243;Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786.
 {¶ 8} Civ.R. 56(C) provides, in relevant part, as follows:
Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 9} Thus, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 10} It is important to note that only disputes over material facts preclude a trial court from granting summary judgment. See Anderson v.Liberty Lobby, Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505,91 L.Ed.2d 202 "As to materiality, the substantive law will identify which facts are material." Id.; Hoyt, Inc. v. Gordon Assoc., Inc.
(1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088. Thus, if non-material facts remain disputed, summary judgment is not necessarily precluded. Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301,304, 733 N.E.2d 1186; see, also, Perez v. Scripps-Howard BroadcastingCo. (1988), 35 Ohio St.3d 215, 218-219, 520 N.E.2d 198; Turner v. Turner
(1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123.
 B {¶ 11} In its first assignment of error, FD asserts that the trial court erred by granting WWS summary judgment. It argues that the trial court erroneously followed the "law of the case" doctrine when an intervening decision from the Ohio Supreme Court, Galatis, supra, changed the law of the case. FD contends that Galatis "substantially alters long-standing legal principles governing the interpretation of insurance polices, including principles cited and applied by this Court in its prior opinions in this case." It argues that under Galatis, courts must interpret a written contract according to the parties' intent. FD contends that when we construed the waiver provision in the payment bond, we "expanded the scope of the waiver provision beyond the scope of the parties' intent." FD further asserts that Galatis overruled SolonFamily Physicians, Inc. v. Buckles (1994), 96 Ohio App.3d 460, 464,645 N.E.2d 150, which held that "doubtful language in the contract of surety must be construed strongly against the surety, and in favor of indemnity."
 {¶ 12} We disagree with FD that the trial court improperly applied the law of the case doctrine when it granted WWS summary judgment and that Galatis alters the law of the case we previously set forth. The law of the case doctrine is a rule of practice analogous to estoppel. Hopkinsv. Dyer, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ at 22.
"`[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan [1984], 11 Ohio St.3d [1,] 3, 462 N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. State ex rel. Potain v. Mathews (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343. It is considered a rule of practice, not a binding rule of substantive law. Hubbard ex rel. Creed v. Sauline
(1996), 74 Ohio St.3d 402, 404, 659 N.E.2d 781."
Id. at ¶ 15.
 {¶ 13} "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given." Nolan, 11 Ohio St.3d at 3 (citations omitted). Thus, "absent extraordinary circumstances, such as an intervening decision by [the Ohio Supreme C]ourt, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Id. at 5; see, also, State ex rel. Sharif v.McDonnell (2001), 91 Ohio St.3d 46, 47, 741 N.E.2d 127.
 {¶ 14} In the case at bar, we do not believe that Galatis represents an intervening decision from the Ohio Supreme Court that affects the law of the case doctrine. Galatis was the court's response to the much-maligned uninsured/underinsured motorist insurance Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, decision. In Galatis, the court held:
"Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment."
Id. at paragraph two of the syllabus.
 {¶ 15} In reaching its decision, the court relied upon well-established rules of contract interpretation:
"When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing Employers' Liab. Assur.Corp. v. Roehm (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.
Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289,509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. Alexanderv. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403,374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. GulfIns. Co. v. Burns Motors, Inc. (Tex. 2000), 22 S.W.3d 417, 423.
On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. Shifrin v. ForestCity Enterprises, Inc. (1992), 64 Ohio St.3d 635, 597 N.E.2d 499. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. Id.; Blosser v.Enderlin (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]").
It is generally the role of the finder of fact to resolve ambiguity. See, e.g., Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64,609 N.E.2d 144. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. Cent. Realty Co. v. Clutter (1980), 62 Ohio St.2d 411,413, 16 O.O.3d 441, 406 N.E.2d 515. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured. King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.
There are limitations to the preceding rule. `Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.' Morfoot v. Stake (1963), 174 Ohio St. 506, 23 O.O.2d 144,190 N.E.2d 573, paragraph one of the syllabus. Likewise, where `the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party.' Cook v. Kozell
(1964), 176 Ohio St. 332, 336, 27 O.O.2d 275, 199 N.E.2d 566. This rings especially true where expanding coverage beyond a policyholder's needs will increase the policyholder's premiums. Id." Galatis, at ¶¶ 11-14.
 {¶ 16} A simple reading of the above principles that Galatis expressed reveals that it is not an intervening decision that alters the law of the case sub judice. We do not doubt that our primary role in interpreting any contract is to give effect to the parties' intent. When the contract is unambiguous (which, in the prior appeal, we stated FD's payment bond is), we discern that intent from the language of the contract, not from what the parties, in hindsight, state the intent is. The parties' extrinsic statements regarding intent may control when the contract language is ambiguous. In our prior decision, however, we did not find the payment bond language to be ambiguous. We stated: "Because the payment bond contract unambiguously states that any change, extension of time, alteration, etc., does not `in any way affect [FD's] obligation' under the payment bond, FD waived the defense that [WWS] impaired its suretyship status." (Emphasis added). We recognized that to the extent it was ambiguous, the language must be construed strictly against FD.[2]
In our prior decision, we recognized and applied the same principlesGalatis subsequently re-affirmed. Galatis did not effectively overrule the principles we expressed in our prior opinion and it does not mean that the law of the case doctrine is inapplicable.
 {¶ 17} Furthermore, we disagree with FD that the case on remand involved new facts or issues that defeats the application of the law of the case doctrine. The parties presented no new material facts or issues. The trial court, therefore, properly applied the law of the case doctrine and granted WWS judgment as a matter of law.
 {¶ 18} Accordingly, based upon the foregoing reasons, we overrule FD's first assignment of error.
 C {¶ 19} In its second assignment of error, FD argues that the trial court erred by overruling its summary judgment motion because under R.C.1303.39, WWS received payment in full. FD contends that WWS's endorsement of the checks and payment of the money discharged the obligation owed to WWS. It further argues that under the joint check rule, WWS received payment in full.
 {¶ 20} We disagree with FD that the trial court erred by overruling its summary judgment motion. The law of the case doctrine barred the trial court from considering the arguments that we had rejected in the prior appeal. Moreover, neither the joint check rule nor R.C. 1303.39(B) shows that FD is entitled to judgment as a matter of law.
 {¶ 21} In our May 30, 2003 entry on FD's application to reconsider, we noted that our holding that the payment bond language controlled "obviat[ed] the need to explicitly rule on whether R.C. 1303.39(B) or the `joint check rule,' which Ohio has not adopted, precluded [WWS's] recovery." For those same reasons, we decline to consider FD's R.C.1303.39(B) or joint check rule argument. FD seeks to re-litigate issues that we implicitly rejected in the prior appeal. Moreover, we agree with WWS that R.C. 1303.39(B)[3] is not an available defense to FD.
 {¶ 22} We further recognize that the United States Sixth Circuit Court of Appeals rejected FD's argument that it is not liable under the payment bond. See McWane, Inc. v. Fidelity and Deposit Company ofMaryland (C.A.6, 2004), 372 F.3d 798. McWane involved substantially the same issues. The court considered whether one of the other suppliers, Clow Water Systems Company, on the same project as WWS could collect under the same payment bond. The district court granted FD summary judgment based upon its conclusion that Clow impaired FD's suretyship status by endorsing multiparty checks. The Sixth Circuit reversed and basically adopted the reasoning we had set forth in our prior decision. See id. at 803 ("[T]his court considers persuasive the reasoning and conclusions of the Ohio Court of Appeals, as the Water Works suit involved the same defendant [FD], the same project, the same joint checks and the identical payment bond waiver clause"). The Sixth Circuit looked to the payment bond language and concluded that FD waived the defense regarding extension of time for performance. The court further determined that Clow did not impair FD's suretyship status, that the joint check rule did not alter FD's liability under the bond, and that the U.C.C. did not apply. In rejecting FD's joint check rule argument, the court stated:
"The joint check rule does not inoculate FD from liability in this instance. The rule provides that when a subcontractor and the materialman are joint payees, and no agreement exists with the owner or general contractor as to the allocation of the proceeds, a materialman, by endorsing the check, is deemed to have received the monies owed. This rule emerged from the California Supreme Court decision in Post BrothersConstruction Company v. Yoder, 20 Cal.3d 1, 141 Cal.Rptr. 28, 569 P.2d 133
(1977). In that resolution, the court concluded that the joint check rule barred the supplier's claim against the surety, because the owner/contractor was the maker of the multi-party check. It reasoned that when the supplier endorsed the multiple-party check, it waived its right to recovery from the maker of the check. The court further reasoned that the surety for the maker of the checks could use the joint check rule as a defense to the supplier's claim. Id. at 134.
As stated and applied, however, the rule does not extend beyond the relationship between the maker of the checks and his or her sureties. As a co-payee, Grooms and its surety FD stand beyond the reach of the joint check rule.
In addition, federal courts that have considered the rule, have noted that a joint check arrangement, standing alone, does not waive a supplier's right to recover from a contractor's surety."
 {¶ 23} Id. at 806 (citations omitted).
 {¶ 24} Accordingly, based upon the foregoing reasons, we overrule FD's second assignment of error.
 D {¶ 25} In its third assignment of error, FD argues that the trial court erred by granting WWS summary judgment because WWS failed to properly support its motion. It asserts that the affidavit WWS submitted to support its summary judgment motion "is filled with conclusions, not statements of specific fact, and is based almost exclusively upon inadmissible hearsay."
 {¶ 26} In the case at bar even if we assume that the affidavit creates disputed facts, we note that none are material facts. The material facts needed to dispose of WWS's claim, i.e., the payment bond language and WWS's judgment against Grooms, are contained elsewhere in the record. Nothing in the affidavit changes the material facts that we need to dispose of this appeal and that the trial court needed to dispose of the summary judgment motion.
 {¶ 27} Accordingly, based upon the foregoing reasons, we overrule FD's third assignment of error.
 II {¶ 28} In its fourth assignment of error, FD argues that the trial court erred by awarding prejudgment interest. It asserts that a prejudgment interest award of 18% is contrary to R.C. 1343.03 and the October 30, 2001 judgment WWS obtained against Grooms. FD further contends that nothing in the payment bond obligates it to pay interest.
 {¶ 29} WWS argues that the trial court properly determined that the contractual agreement between WWS and Grooms governed prejudgment interest. WWS contends that because FD is coextensively liable with Grooms to pay WWS's claim, FD was legally obligated to pay the interest at the rate specified in the agreement between the WWS and Grooms.
 {¶ 30} R.C. 1343.03(A) governs interest under a bond or other written instrument:
[W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.
 {¶ 31} Thus, when the parties enter into a written agreement that specifies the interest rate, the statutory rate does not apply.
 {¶ 32} The mandatory language of R.C. 1343.03(A) means that the trial court must award prejudgment interest when appropriate. See WW Roofing Siding, Inc. v. H.P. Group, L.L.C. (Aug. 22, 2001), Hancock App. No. 5-01-11. When a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law. Id. The purpose of the interest award is to make the aggrieved party whole by compensating for the period of time between the claim becoming "due and payable" and the judgment. Id. Although a party that prevails on a contract claim is entitled to prejudgment interest as a matter of law, the amount of interest to be awarded is based on the trial court's factual determination of the accrual date and interest rate. Id.
 {¶ 33} In the case at bar, the undisputed facts show that WWS and Grooms entered into an agreement that provided for 1 ½ interest per month. FD, as Grooms' surety, is co-extensively liable for Grooms's interest rate obligation. See Whitaker Merrell Co. v. Claude A. Janes,Inc. (1961), 87 Ohio Law Abs. 556, 173 N.E.2d 402. The trial court properly determined, as a matter of law, that WWS is entitled to prejudgment interest. Therefore, FD's argument that it is not liable for interest is without merit.
 {¶ 34} FD further complains as to the date interest began accruing, August 14, 2000. Prejudgment interest is calculated from the date payment becomes due. Horning-Wright Co. v. Great American Ins. Co. (1985),27 Ohio App.3d 261, 264, 500 N.E.2d 890. The August 14, 2000 date represents the date that WWS submitted its formal claim for payment to FD on the bond. On that date, payment became due and the trial court properly ordered prejudgment interest from that date.
 {¶ 35} Accordingly, based upon the foregoing reasons, we overrule FD's fourth assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Concurs in Judgment Only Kline, J.: Concurs in Judgment 
Opinion.
[2] Even if Galatis somehow changed this principle that we applied fromBuckles, because that principle was not the essential basis for our decision, Galatis still does not change the law of the case. The rule from Buckles applies when the contract is ambiguous. In the case at bar, we stated that the contract is not ambiguous. not be enforced to the extent of the amount payable on the instrument, and to that extent the obligee's rights against the obligor are limited to enforcement of the instrument.
[3] R.C. 1303.39(B) states:
(B) Unless otherwise agreed and except as provided in division (A) of this section, if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and all of the following rules apply:
(1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check.
(2) In the case of a note, suspension of the obligation continues until dishonor of the note or until it is paid. Payment of the note results in discharge of the obligation to the extent of the payment.
(3) Except as provided in division (B)(4) of this section, if the check or note is dishonored and the obligee of the obligation for which the instrument was taken is the person entitled to enforce the instrument, the obligee may enforce either the instrument or the obligation. In the case of an instrument of a third person that is negotiated to the obligee by the obligor, discharge of the obligor on the instrument also discharges the obligation.
(4) If the person entitled to enforce the instrument taken for an obligation is a person other than the obligee, the obligee may not enforce the obligation to the extent the obligation is suspended. If the obligee is the person entitled to enforce the instrument but no longer has possession of it because it was lost, stolen, or destroyed, the obligation may not be enforced to the extent of the amount payable on the instrument, and to that extent the obligee's rights against the obligor are limited to enforcement of the instrument.