[Cite as *Ameritech Publishing , Inc. v. Snyder Tire Wintersville, Inc.*, 2010-Ohio-4868.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| AMERITECH PUBLISHING, INC., | ) | |
| | ) | CASE NO. 09 JE 35 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| SNYDER TIRE WINTERSVILLE, INC. | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from County Court No. 2, Case No. 06 CVF 79.

JUDGMENT:      Modified and Affirmed.

APPEARANCES:
For Plaintiff-Appellee:      Attorney Caroline H. Gentry
Attorney Jennifer Fuller
One South Main Street
Suite 1600
Dayton, OH 45402-2028

For Defendant-Appellant:      Attorney Robert J. D'Anniballe, Jr.
100 North Fourth Street
Sinclair Building, 10th Floor
Steubenville, OH 43952

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 30, 2010

DeGenaro, J.

**{¶1}** This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments before this court. Snyder Tire Wintersville, Inc. appeals the August 20, 2009 decision of the Jefferson County Court No. 2 that ruled in favor of Appellee, Ameritech Publishing, Inc., on one of two actions (2006 CVF 00205) for breach of contract, and awarded $6,714.32. The trial court dismissed the remaining action (2006 CVF 00079) for lack of adequate proof of damages.

**{¶2}** Snyder argues that the trial court's award was in error, as Ameritech did not prove that there was a meeting of the minds between the parties for the provision of advertising services. Snyder also argues that the trial court could not have dismissed one of Ameritech's actions and granted the other, because the alleged contract underlying both actions was contained in one document.

**{¶3}** The Ameritech Customer Receipt constituted an enforceable contract which remained in effect at the time of Ameritech's performance and demand for payment. Moreover, Snyder conceded at trial that it had agreed to contract with Ameritech for one of the two advertisements at issue. The trial court's dismissal of the 2006 CVF 00079 complaint, due to inadequate proof of damages, did not contradict its finding that there was an enforceable contract between the parties for the purposes of the 2006 CVF 00205 complaint.

**{¶4}** However, the trial court did commit error by awarding $6,714.32, which was the amount Ameritech prayed for in the dismissed complaint. The trial court should have granted $4,637.85, the amount prayed for in the surviving action. Therefore, the judgment of the trial court is modified to reflect the correct amount of $4,637.85.

### Facts and Procedural History

**{¶5}** On August 2, 2006, Ameritech filed an action for breach of contract against Snyder (2006 CVF 00205), claiming that Snyder had not paid for its Wintersville advertisements in Ameritech's Steubenville and Eastern Ohio River Area directories since October of 2004, and that $4,637.85 was still owed for the advertising services that Ameritech had performed, plus 18% interest, from September 2005. Snyder did not file

an answer, but filed a motion to dismiss on August 10, 2006, claiming that Ameritech was merely filing this action to harass Snyder, and noting that Ameritech had already filed an action against Snyder on March 27, 2006 (2006 CVF 00079) and had failed to comply with Snyder's discovery requests for that case. Ameritech filed a response on August 23, 2006, attaching documentation that indicated a balance of $4,637.85 owed for the Wintersville advertisements (2006 CVF 00205), and a separate balance of $6,714.43 owed for the Calcutta advertisements in Ameritech's East Liverpool and Salem Lisbon directories (2006 CVF 00079), which justified the multiple actions.

{¶6}  After receiving leave from the trial court, Ameritech filed a motion for summary judgment on November 16, 2006. Ameritech attached an affidavit regarding the outstanding account balance, a 2003 "Ameritech Customer Receipt" for the monthly costs for the Wintersville and Calcutta advertisements signed by Douglas Snyder, copies of advertisements, and a billing statement which indicated that Snyder owed a total of $4,637.85 for the 2004 through 2005 Wintersville advertisements. On January 17, 2007, Snyder filed a response to Ameritech's motion for summary judgment. Snyder claimed that Ameritech had failed to produce proof of a contractual agreement between the parties, as the signed "receipt" did not constitute a contract. Snyder attached copies of payments made to Ameritech between November 2003 and October 2004, and stated that it had not attached payments made in 2005 due to a lack of specificity by Ameritech as to which invoices  were claimed to be outstanding. The trial court overruled Ameritech's motion for summary judgment on May 24, 2007, and the parties continued with discovery.

{¶7}  On January 10, 2008, Snyder filed a motion for summary judgment. Snyder again implied that the 2003 "Ameritech Customer Receipt" signed by Douglas was not a contract, and noted that Ameritech had not provided proof of any contract for advertising services subsequent to 2003. Snyder claimed that it had not wanted or contracted for advertising in the Eastern Ohio River Area directory. Snyder made no mention of the advertisements in the Steubenville directory. Snyder also claimed that it had not wanted or contracted for advertising in the East Liverpool or Salem Lisbon directories (though the

case addressing these advertisements had not yet been consolidated with 2006 CVF 00205 at this point). Snyder noted that its Calcutta store had closed in 2004, and that it would not have consented to mention the Calcutta location in any of the four directories after May of 2004.

**{¶8}** On February 8, 2008, Ameritech filed a response to Snyder's motion for summary judgment. Ameritech attached a complete copy of the agreement signed by Douglas on July 15, 2003. The agreement stated that the publishing period of each directory edition was generally twelve months, automatically renewing each year "at the then-prevailing rates" unless Snyder provided notice of alteration or cancellation in writing at least fourteen weeks prior to the end of the one-year term. The agreement listed the monthly billing amounts for each of the four directories. The agreement indicated that the beginning of the one-year terms for the Eastern Ohio River Area, Steubenville, and East Liverpool directories was October 1, 2003, and that the beginning of the one-year term for the Salem Lisbon directory was March 1, 2004. Ameritech also attached a certified mail receipt for Snyder, dated August 7, 2004, which contained an unsigned agreement listing the new rates for the respective October 1, 2004 and March 1, 2005 terms.

**{¶9}** On October 22, 2008, Ameritech filed a second motion for summary judgment. Ameritech attached many of the same documents addressed in its February 8, 2008 response, as well as a detailed "billing itemization" for the Steubenville and Eastern Ohio River Area directories, detailing the $4,637.85 owed. Ameritech also addressed the payments listed in Snyder's January 17, 2007 response motion, and identified where those payments had been accounted for in Snyder's billing.

**{¶10}** On November 18, 2008, Snyder filed a response to Ameritech's second motion for summary judgment. Snyder briefly repeated its statements from its January 10, 2008 motion: that it had not wanted or contracted for advertising in three of the four directories, and that it would not have consented to mention the Calcutta location in any of the advertisements after May of 2004. Ameritech filed a reply on December 1, 2008, noting that Snyder had admitted that Douglas was authorized to bind Snyder to contractual obligations, and that Douglas's July 15, 2003 signature obligated Snyder to

pay the charges claimed.

**{¶11}** The trial court held a hearing on the motions for summary judgment of both parties on December 4, 2008. The trial court issued a judgment entry on December 15, 2008, denying Ameritech's motion, and a judgment entry on December 29, 2008, denying Snyder's motion. The matter eventually proceeded to trial on July 30, 2009. The trial transcript indicates that the July 30, 2009 hearing addressed the merits of both 2006 CVF 00079 and 2006 CVF 00205.

**{¶12}** At trial, Ameritech presented the testimony of Amy Appleman, a field collections manager for AT&T (fka Ameritech). Appleman discussed the July 15, 2003 Ameritech Customer Receipt for all four directories signed by Douglas; the certified mailing of the August 2004 notification of pricing and renewal for each directory; and, the advertisements for Snyder in each directory in 2003 and 2004. Appleman admitted on cross-examination that nothing in the July 2003 contract indicated what the contract pricing would be in subsequent years. Appleman testified that the certified letter from Ameritech to Snyder in August of 2004 specified the new rates, and that Ameritech did not receive any notice of cancellation from Snyder at any point.

**{¶13}** As for 2006 CVF 00205, Appleman discussed the billing itemization for the Steubenville and Eastern Ohio River directories. Appleman testified that all payments by Snyder had been credited for that account, and that $4,637.85 remained owing. Appleman testified that Snyder paid for the October 2005 Steubenville directory advertisements in advance, and that the delinquent amount in this case is related only to the October 2004 editions. Appleman testified that Snyder is still presently using Ameritech's advertising services.

**{¶14}** As for 2006 CVF 00079, the trial transcript reflects that a portion of Appleman's testimony was not recorded. However, the billing itemizations for the East Liverpool and Salem Lisbon directories demonstrated outstanding balances of $3,945.32 and $2,769.00, or a total of $6,714.32. Appleman stated that she was not aware that Snyder Tire of Calcutta started closing down in January of 2004 and completed closure in May of 2004.

{¶15} Snyder presented the testimony of Alan Tipton, who testified that he has worked for Snyder for 23 years. Tipton testified that Snyder Tire of Calcutta and Snyder Tire of Wintersville were separate corporations, and that he was not aware of any agreement between Snyder of Calcutta and Ameritech. Ameritech's correspondence to Snyder regarding all directories was sent to 401 Cadiz Road in Wintersville, and Tipton admitted that Snyder would have received mail at that address. Tipton testified that Dwane Gillingham, who signed Ameritech's certified mail receipt on August 7, 2004, was an employee of Snyder. Tipton testified that he did not know whether Gillingham had provided Ameritech's August 2004 certified mailing to Snyder. Tipton testified that the Calcutta location closed in May of 2004. After the closing of the Calcutta store, there was no reason for Snyder to advertise in the Salem Lisbon and East Liverpool directories.

{¶16} After the close of evidence, Snyder argued that it was never put on notice as to what the prevailing rates would be for the advertisements as charged by Ameritech in 2004 and 2005, and thus that there was an essential term missing from the 2003 contract, and no meeting of the minds between the parties. Snyder argued that it had already paid for the Steubenville advertisements, and that Ameritech mistakenly failed to account for Snyder's payments.

{¶17} In its August 20, 2009 judgment entry, the trial court noted that it had consolidated both actions on its own motion. The trial court concluded that Snyder contracted for advertising services for the Wintersville location, which included the Eastern Ohio River Area and Steubenville directories. The trial court also concluded that Ameritech "did not prove its case by a preponderance of the evidence for the advertising charges in Exhibit F" for the Calcutta location, which included the East Liverpool and Salem Lisbon directories. The trial court awarded Ameritech $6,714.32 in 2006 CVF 00205 for the Wintersville advertisements, and dismissed Ameritech's complaint in 2006 CVF 00079 for the Calcutta advertisements.

### Meeting of the Minds

{¶18} In its sole assignment of error, Snyder asserts:

{¶19} "The trial court erred in finding partially for the Plaintiff and awarding Plaintiff

$6,714.32."

**{¶20}** Snyder contends that there was no meeting of the minds and thus no enforceable contract between Snyder and Ameritech for the advertising services provided during the October 2004 directory edition.

**{¶21}** Snyder has waived at least a portion of its argument for appeal. During pre-trial motions, Snyder repeatedly took issue with the existence of any agreement for the East Liverpool, Eastern Ohio River Area, and Salem Lisbon directory advertisements, but did not address the validity of the agreement for advertising services in the Steubenville directory. At trial, Snyder did not argue that there was no valid agreement for Ameritech's advertisements in the October 2004 Steubenville directory. Instead, Snyder claimed that it had already paid for the Steubenville advertisements, and that Ameritech had made an error in their billing records. Snyder thus conceded that there was a contract between the parties for the Steubenville directory, and only took issue with proof of breach and damages.

**{¶22}** A party's failure to raise an issue before the trial court waives the party's right to raise that issue on appeal. See *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, at ¶34, quoting *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 1993-Ohio-49, 611 N.E.2d 830. Because Snyder did not deny the existence of an agreement for the Steubenville directory advertisements at trial, he cannot now deny its existence on appeal. However, Snyder did maintain throughout the proceedings below that there was no valid contract regarding the Eastern Ohio River Area directory. Thus, Snyder may still argue the issue of contract formation on appeal in the limited context of the Eastern Ohio River Area directory advertisements.

**{¶23}** To prevail on a contract action, the complaining party must prove all of the essential elements of a contract, including an offer, acceptance, manifestation of mutual assent, consideration, and certainty as to essential terms of the contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶16; *Juhasz v. Costanzo* (2001), 144 Ohio App.3d 756, 762, 761 N.E.2d 679. In order for a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite and

there must be a meeting of the minds of the parties. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (vacated on other grounds); *State ex rel. Bayus v. Woodland Park Properties*, 7th Dist. No. 05 MA 169, 2007-Ohio-3147, at ¶22. The construction of a written contract's terms involves a question of law, which this court reviews de novo. *In re All Kelly & Ferraro Asbestos Cases,* 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, at ¶28.

{¶24} Snyder asserts that there was no meeting of the minds, preventing an enforceable contract with Ameritech, because the July 2003 contract was presented as a receipt and because the terms of the contract were hidden in fine print on the back of the contract. Snyder further asserts that the subject matter of the contract was uncertain, rendering the contract unenforceable, because the price term was left open upon subsequent contract renewal, and because the specific language of the automatic-renewal clause was ambiguous, contradictory, and hidden in fine print.

{¶25} We first address Snyder's contentions that the written agreement was not identified as a contract and contained hidden terms, preventing a meeting of the minds between the parties. It is an axiom of contract law that a person who is competent to contract cannot avoid a contract's terms by claiming that he did not notice or read those terms prior to signing. *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 503, 692 N.E.2d 574; *McAdams v. McAdams* (1909), 80 Ohio St. 232, 240-241, 88 N.E. 542; *Upton v. Tribilcock* (1875), 91 U.S. 45, 50, 23 L.Ed. 203; *Vindicator Printing Co., Inc. v. Tuff Kote of Warren* (Mar. 16, 1989), 7th Dist. No. 88 CA 59 (1989 WL 25565).

{¶26} The Ameritech contract consists of the front and back of one page, and most of the terms of the contract are listed on the back side of the contract. Directly above the signature line, the contract states "I have read and understand the terms and conditions on the face and reverse side * * *." The reverse side of the document is entitled "TERMS GOVERNING YOUR REQUEST FOR ADVERTISING," and includes the following clauses:

{¶27} "2. If you decide to cancel or change an Advertising Unit in a subsequent edition, you must notify us in writing by registered or certified mail at least fourteen (14)

weeks before the Issue Date of the directory. The Issue Date is the first day of the month in which a directory is first distributed to the general public and is usually identified on the directory cover by month and year. * * *

{¶28} "3. Unless an alternative payment method is noted on the front of this document, we will invoice you each month during the Issue Life (the time between the Issue Dates of subsequent editions) of a directory. The Issue Life of a directory is usually twelve (12) months, but we may extend or reduce the Issue Life by no more than six (6) months without notice. UNLESS CANCELLED BY YOU OR REJECTED BY US, YOU WILL BE INVOICED FOR ADVERTISING PUBLISHED IN SUBSEQUENT DIRECTORY EDITIONS AT THE THEN-PREVAILING RATES. * * *"

{¶29} Contrary to Snyder's claims, the one-page explanation of terms does not constitute a "maze of fine print." Cf. *Fortune v. Castle Nursing Homes, Inc.*, 164 Ohio App.3d 689, 2005-Ohio-6195, 843 N.E.2d 1216, at ¶31 (noting that the burying of an arbitration clause in the fifth page of a seven page contract contributed to the finding that the clause was unenforceable). The clauses referenced are in the same sized font as the rest of the clauses in the contract. The specific language regarding renewal and cancellation is in capitalized letters, causing it to be more noticeable than the rest of the language in the third clause, rather than less noticeable, let alone hidden.

{¶30} Snyder has not demonstrated that the contract signed by Douglas in July of 2003 was a misleading document, or that it contained hidden terms. The trial court properly declined to find that the contract was invalid based on its form or formatting. Snyder's argument on this point is therefore meritless.

### Certainty of Price

{¶31} Next, Snyder asserts that the contract signed by Douglas in July of 2003 was unenforceable because there was no certainty as to price upon the renewal of the contract.

{¶32} A contract price must be definite and certain. *Preston v. First Bank of Marietta* (1983), 16 Ohio App.3d 4, 6, 473 N.E.2d 1210. If a price term is "so vague and indefinite that one party may charge what he will while the other party must guess at his

obligation, the contract is illusory and unenforceable." Id. However, a contract is not unenforceably vague "if the agreed price, though not specifically stated, is easily ascertainable by reference to some extrinsic standard, e.g., a contract to buy stock at market price." Id. See, also, *Oglebay Norton Co. v. Armco, Inc.* (1990), 52 Ohio St.3d 232, 236, 556 N.E.2d 515. Additionally, the law may impose a presumption of reasonableness or "fair value" when services are performed pursuant to an express contract that does not specify a price. *Oglebay Norton Co.*, at 236-237 (allowing an analogy of the Uniform Commercial Code's presumption of reasonableness for a missing or open price term to a services contract).

**{¶33}** Here, the price term was certain enough to constitute an enforceable contract. For the Eastern Ohio River Area directory, Snyder had used Ameritech's services in 2002, and the record indicates that the monthly contract price during the term beginning in October of 2002 was $129.50 per month. For the contract term beginning in October of 2003, the monthly price for the same service rose to $133.00 per month, an increase of 2.7%. The $133.00 per month price was explicitly stated in the signed contract for the October 2003 term. For the one-year term in dispute, beginning in October of 2004, the monthly price rose to $136.50 per month, an increase of 2.6%.

**{¶34}** The 2003 contract included the following clause:

**{¶35}** "3. Unless an alternative payment method is noted on the front of this document, we will invoice you each month during the Issue Life (the time between the Issue Dates of subsequent editions) of a directory. The Issue Life of a directory is usually twelve (12) months, but we may extend or reduce the Issue Life by no more than six (6) months without notice. UNLESS CANCELLED BY YOU OR REJECTED BY US, YOU WILL BE INVOICED FOR ADVERTISING PUBLISHED IN SUBSEQUENT DIRECTORY EDITIONS AT THE THEN-PREVAILING RATES. * * *"

**{¶36}** The reference to "prevailing rates" satisfied the certainty requirement, just as a reference to "market price" would be adequate for certainty of a contract's price term as described in *Preston*, supra. Given the "prevailing rates" term in the contract between Snyder and Ameritech, Snyder would not be at the mercy of Ameritech's whims, and

instead would only be obligated to pay an amount comparable to the prevailing rates for similar services by Ameritech. The "prevailing rates" for directory advertising services in a particular year would therefore be easily ascertainable. Thus, the price term in the parties' contract was not so uncertain as to render the contract unenforceable.

## Certainty of Renewal Provision

{¶37} Next, Snyder asserts that the automatic-renewal provision in the contract is ambiguous and in conflict with other terms of the contract. Snyder urges that the automatic-renewal provision should be strictly construed against Ameritech and excised from the contract.

{¶38} The meaning of a written contract is to be ascertained from the language of the contract. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus. The purpose of contract construction is to give effect to the intent of the parties, and a reviewing court will generally presume that the intent of the parties resides in the language they employ in the agreement. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 797 N.E.2d 1256, 2003-Ohio-5849, at ¶11; *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. The language of a contract "is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co.* at ¶11. When contract terms are clear and unambiguous, a reviewing court should not create a new contract by finding an intent that is not expressed in the clear language expressed by the parties. Id. at ¶12, citing *Blosser*, supra.

{¶39} Snyder contends that the specification of directory edition dates on the front of the contract conflicts with the automatic-renewal provision on the back of the contract. Snyder explains that "if the parties agreed that the contract was to automatically renew, there would be no reason to set forth specific Issue dates and to apply the automatic renewal would render the Issue dates meaningless." This argument is unpersuasive. The contract specified that October 1, 2003 would constitute the beginning of a one-year period for the Eastern Ohio River Area directory, and also stated that the period would renew in the following year in the absence of cancellation by Snyder. There is no ambiguity or inconsistency in providing for automatically renewing one-year terms and

also specifying the date on which the first one-year term begins. In fact, both of those terms are necessary in order to give Snyder notice of when he is able to cancel the contract, before the fourteen-week deadline.

{¶40} As a final argument, Snyder contends that the trial court's conclusion must be erroneous, because it was inconsistent in its finding that there was a meeting of the minds regarding the Wintersville advertisements but not the Calcutta advertisements, when the parties' agreement on all advertisements was described in one unified writing.

{¶41} However, the trial court's conclusion only states that Ameritech did not "prove its case" regarding the *billing statement* for the Calcutta location, and that Snyder "agreed to the charges" for the Wintersville location. The court did not elaborate in order to explain its conclusion. The trial court's choice of words indicates that it found that the contract was a valid enforceable written agreement as to all locations, but found that Ameritech only met its burden of proof of damages for the Wintersville location and not for the Calcutta location. Snyder's claim of inconsistency is therefore meritless.

## Conclusion

{¶42} The contract between Snyder and Ameritech was definite on its face, and certain as to its terms. Snyder's agreement to the terms, manifested by Douglas's signature, indicates that there was a meeting of the minds between the contracting parties. The trial court therefore properly held that there was a valid enforceable contract between the parties.

{¶43} Finally, although Snyder's arguments do not have merit, the trial court's decision does contain error. The trial court specifically found that the amounts owed for the Calcutta location advertisements were not adequately proven. Those amounts were $3,945.32 and $2,769.00, or a total of $6,714.32. However, the trial court used that same amount, $6,714.32, as the award for the payment owed for the Wintersville advertisements. The trial court should have used the amount prayed for in the Wintersville complaint, which was $4,637.85. As admitted by Ameritech during the parties' oral arguments before this court, the award amount in the decision below seems to have been a scrivener's error.

**{¶44}** Accordingly, we sua sponte find error in the trial court's judgment, only to the extent that an incorrect award amount was determined. Therefore, Snyder's sole assignment of error is meritless and the judgment of the trial court is modified to $4,637.85 and otherwise affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.