[Cite as *S.P. Drilling Servs., Inc. v. Cooper's Excavating, L.L.C.*, 2019-Ohio-55.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

S.P. DRILLING SERVICES, INC.,  :

                                     :      Case No. 17CA1058

       Plaintiff-Appellant,  :

                                       :

       vs.                               :      DECISION AND JUDGMENT
                                     :      ENTRY

COOPER'S EXCAVATING LLC,  :

                                       :

       Defendant-Appellee.       :      Released: 01/08/19
_____

APPEARANCES:

Jeff Corcoran, Goshen, Ohio, for Appellant.

David E. Grimes, Law Office of David E. Grimes, West Union, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from an Adams County Court judgment denying Appellant, S.P. Drilling Services, Inc.'s, breach of contract claim filed against Appellee, Cooper's Excavating LLC. On appeal, Appellant contends that 1) the magistrate abused his discretion by adding a performance requirement as a condition/term of the contract; 2) Appellee, not Appellant, breached the contract; and 3) Appellant is entitled to expectancy damages as a result of Appellee's breach. However, because we have concluded that the trial court properly determined time was of the

essence with respect to Appellant's performance of his obligations under the contract, and that Appellant, rather than Appellee, breached the contract, we find no merit to Appellant's first and second assignments of error and they are overruled. Further, in light of our disposition of Appellant's first two assignments of error, Appellant's third assignment of error has been rendered moot and we do not address it. Accordingly, the decision of the trial court is affirmed.

FACTS

{¶2} A review of the record reveals that Appellant filed a complaint against Appellee alleging breach of contract and unjust enrichment on September 26, 2016. Appellant thereafter filed an answer and also a counterclaim alleging breach of contract. The litigation stems from a construction contract dispute that arose in early April 2016, in which Appellant was a subcontractor and Appellee was a general, or prime, contractor, on a roadway improvement project involving the Ohio Department of Transportation (hereinafter "ODOT").

{¶3} Appellee was awarded a contract by ODOT, as a general contractor, and Appellant submitted a bid as a subcontractor for Appellee. Appellant was awarded the bid, which involved the drilling of holes for excavation bracing, in connection with the construction of a concrete box

culvert, or bridge, in Adams County, Ohio. In addition to email and oral communications between the parties regarding the work to be performed by Appellant as the subcontractor, Appellee issued a purchase order to Appellant on March 29, 2016 to install drilled shafts for excavation bracing at a price of $14,000.00. The purchase order contained no other terms, conditions or specifications.

{¶4} The record reveals that Appellant mobilized his equipment and arrived at the job site at around noon on Tuesday, April 5, 2016, the day after a traffic control device was installed to provide for a lane closure. Appellant, however, delivered his equipment and left without beginning the drilling operations that day, with a plan to return on Friday. In response, Appellee obtained the services of another subcontractor who was able to perform the work to completion the next day, at a substantially lower price. Appellant was notified on Thursday, April 7, 2016, that the work had been completed by someone else, and he was directed to remove his equipment from the job site. Appellant thereafter sent Appellee an invoice for $12,204.92 for "Mobilization costs and Profit caused by Cooper's Excavating LLC breach of contract." Appellee's refusal to pay the invoice led to the filing of Appellant's complaint.

{¶5} The matter proceeded to a bench trial on November 15, 2017. Dale Roe, Tammy Pschesang, and Sam Pschesang all testified on behalf of Appellant. Dale Roe testified of his experience in the construction industry and the fact that delays due to weather, approvals and steel deliveries are common in the industry. The testimony was accepted by the trial court, over the objection of Appellee, for purposes of educating the court. Tammy Pschesang, the president and owner or S.P. Drilling Services, Inc. also testified. She testified regarding the contents of the purchase order that was provided by Appellee, and stated that although no other documents were provided, she understood that eight holes were to be drilled as part of the agreement. She also testified that Appellee knew that Appellant could not be present on the job site on Wednesday, April 6 - Thursday, April 7, 2016, and had approved Appellant's to return to work on Friday, April 8, 2016. She testified that Appellant arrived at the job site at noon on Tuesday, April 5, 2016 for what was planned to be a two man/one day job.

{¶6} Sam Pschesang, the general superintendent of Appellant also testified during the trial. He testified that he communicated with Edmund McVey, who is employed by Appellee, regarding the job to be performed. He testified that initial communications began in January of 2016 and that although timing was discussed, the discussion was that the work would need

to be performed the end of March or beginning of April. He testified that after he received the purchase order from Appellee, McVey told him he would be needed the first week of April, and that McVey understood Appellant could not work Wednesday or Thursday of that week. He testified that he had his equipment delivered to the job site on Tuesday of the week at issue, because Appellee told him it would be unwise to bring it prior to having traffic control in place, which was put into place on Monday.

{¶7} Mr. Pschesang testified that he could not begin the drilling work on Tuesday for reasons that changed throughout the course of his testimony. He initially testified that he could not begin drilling because he did not have his auger bit with him on that day. He testified that he had to have his equipment towed to the job site and the equipment and the auger bit could not be towed at the same time. He later testified that the steel had not been delivered to the site at the time he arrived on Tuesday, and that the industry standard was that drilled holes need to be filled, with steel, on the same day they were drilled. However, upon cross examination he agreed that he was only contracted to drill holes and had no responsibility for filling the holes with steel. Overall, his testimony indicated his understanding was that he would mobilize and deliver his drilling equipment on Tuesday, be off Wednesday and Thursday, and then return to begin drilling on Friday.

{¶8} Edmund McVey testified on behalf of Appellee.  He stated that Appellee was a prime contractor for ODOT and mostly performed roadway construction.  He testified that although an email from Appellee to Appellant in February estimated Appellant's portion of the job to begin the end of March or beginning of April, he had later telephone conversations with Mr. Pschesang regarding more specific dates closer to the time the purchase order was issued.  McVey testified that he issued the purchase order, in response to Appellant's request for a contract, with the expectation that Appellant's work would be performed on Tuesday, April 5, 2016.  He testified that although he had been informed Appellant could not perform work on Wednesday or Thursday of the week in question, it was his understanding that Appellant would at least drill four of the eight holes on Tuesday, so that Appellee's crew could continue working while waiting on the remainder of the holes to be drilled.  He testified that waiting until Friday to begin drilling would have put the project behind three days.  He conceded that he did not expect Appellant to finish drilling on Tuesday, but he expected drilling to be started on Tuesday and concluded on Friday.

{¶9} The trial court made an oral pronouncement of judgment and issued findings of facts and conclusions of law on the record at the conclusion of the bench trial.  It ultimately found that Appellant, rather than

Appellee, breached the contract, and it denied Appellant's claims for breach of contract and unjust enrichment. It further found that although Appellee had proven its counterclaim for breach of contract by a preponderance of the evidence, it had suffered no damages as a result. Therefore, the trial court did not grant judgment in favor of either party. A very general, written decision was issued thereafter. It is from that decision and judgment entry Appellant now brings its timely appeal, setting forth three assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.    WHETHER THE MAGISTRATE ABUSED HIS DISCRETION BY ADDING A PERFORMANCE REQUIREMENT AS A CONDITION/TERM OF THE CONTRACT.

II.    WHETHER APPELLEE BREACHED THE CONTRACT?

III.    WHAT WERE APPELLANT'S DAMAGES?"

## ASSIGNMENTS OF ERROR I AND II

{¶10} Because assignments of error one and two are interrelated, we address them in conjunction with one another. In its first assignment of error, Appellant questions whether the magistrate abused his discretion by adding a performance requirement as a condition or term of the contract. Appellant contends that there were no circumstances existing which would have triggered a time requirement in the within case, that time of the essence

was not part of the written or verbal agreements between the parties, and that

the trial court erred and abused its discretion by finding Appellant was

contractually obligated to partially complete the drilling of holes on

Tuesday, April 5, 2016. In his second assignment of error, Appellant

essentially contends that Appellee breached the contract, and notes that the

existence of a contract was stipulated by the parties. Appellant seems to

argue under this assignment of error that Appellee prevented it from

performing its obligations under the contract and, as a result, materially

breached the contract.

<u>Failure to Request Findings of Fact and Conclusions of Law</u>

{¶11} Initially, we note that the trial court's decision was very general

in nature and simply stated "that Plaintiff has not proven the case by a

preponderance of the evidence." The trial court further stated that the

counterclaim, while proven, resulted in no damages. Thus, the trial court did

not grant judgment in favor of either party. Further, Appellant did not

request findings of fact and conclusions of law. Civ.R. 52 provides that

"judgment may be general for the prevailing party unless one of the parties

in writing requests otherwise." "In the absence of findings of fact and

conclusions of law, we must presume the trial court applied the law correctly

and must affirm if there is some evidence in the record to support its

judgment." *Short v. Greenfield Meadows Assoc.*, 4th Dist. Highland No. 07CA14, 2008-Ohio-3311, ¶ 10; citing *Bugg v. Fancher*, 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 10; *see also Allstate Financial Corp. v. Westfield Serv. Mgt. Co.*, 62 Ohio App.3d 657, 577 N.E.2d 383 (1989).

{¶12} As noted by this Court in *Short, supra,* at ¶ 10, it has been explained as follows with respect to the failure to request findings of facts and conclusions of law:

> " '[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.
>
> The message is clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already 'uphill' burden of demonstrating error becomes an almost insurmountable 'mountain.' " *Id*.; quoting *Pettet v. Pettet*, 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (1988); *See also Bugg*; *International Converter, Inc. v. Ohio Valley Converting, Ltd.*, 4th Dist. Washington No. 93CA34, 1995 WL 329571 (May 26, 1995).

{¶13} Much like in *Short, supra,* despite entering a general judgment, here the trial court did orally recite its findings at the conclusion of the bench trial. However, as a court speaks only through its journal, we

generally will not consider matters that are not carried over into the court's judgment entry. *Short* at ¶ 11 (internal citations omitted).  Nonetheless, as further explained in *Short*, "when the interests of justice require a reviewing court to ascertain the basis for the trial court's judgment, then the reviewing court must examine the entire proceedings, including the transcript with the trial judge's comments." *Id.*; citing *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 95, 551 N.E.2d 172 (1990); *A.B. Jac., Inc. v. Liquor Control Comm.*, 29 Ohio St.2d 139, 280 N.E.2d 371, paragraph two of the syllabus (1972); *see, also, State v. Jenkins*, 174 Ohio App.3d 374, 882 N.E.2d 57, 2007-Ohio-7180, ¶ 12.  Thus, even though Appellant did not request findings of fact and conclusions of law, we will look to the trial court's oral decision, as contained in the transcript that was provided to us on appeal, to determine the basis for its judgment.

Standard of Review

{¶14} We next consider the appropriate standard of review when reviewing a trial court's determinations after a bench trial when breach of contract is at issue.  Although Appellant argues that the trial court's decision was unreasonable and arbitrary, and that it abused its discretion in finding that time was of the essence with respect to Appellant's drilling obligations under the contract, abuse of discretion is not the correct standard of review

here. Legal issues involving contract interpretation are subject to a de novo standard of review. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 37. *See also Wiltberger v. Davis*, 110 Ohio App.3d 46, 51-52, 673 N.E.2d 628 (1996). However, when a trial court makes factual findings supporting its legal conclusions regarding a contract, those factual findings must be reviewed with great deference and upheld if some competent, credible evidence exists to support them. *See Taylor Bldg. Corp.* at ¶ 38 and *Wiltberger* at 52. Thus, we do not review the trial court's factual findings under an abuse of discretion standard, but rather, we look to see if those facts and the resulting judgment are both supported by the weight of the evidence. *Patton v. Patton*, 4th Dist. Adams No. 01CA712, 2001-Ohio-2599, *2. Furthermore, appellate courts will not reverse judgments as being against the weight of the evidence when those judgments are supported by some competent and credible evidence. *Id.* (internal citations omitted).

Contract Formation and Breach

{¶15} " 'In order to succeed on a breach of contract claim, a party must prove the existence of a contract, the party's performance under the contract, the opposing party's breach, and resulting damage.' " *Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 36 (4th Dist.2015); quoting

*DePompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20; *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 174 Ohio App.3d 29, 2007-Ohio-5562, 880 N.E.2d 926, ¶ 25 (4th Dist.).  "The essential elements of a contract are an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and the legality of the object and the consideration." *Martin* at ¶ 37; citing *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 14.

{¶16} As this Court explained in *Martin* at ¶ 38, "[c]ourts recognize three types of contracts: express, implied in fact, and implied in law." Citing *Legros v. Tarr*, 44 Ohio St.3d 1, 6, 540 N.E.2d 257 (1989); *Spectrum Benefit Options* at ¶ 26.  " 'In express contracts the assent to its terms is actually expressed in offer and acceptance.' " *Legros* at 6; quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938).  By contrast a contract implied in fact is " 'a contract that the parties presumably intended, either by tacit understanding or by the assumption that it existed.' " *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 31; quoting Black's Law Dictionary 322 (7th Ed.1999).  Finally, contracts implied in law are not true contracts, but liability is imposed based on quasi or constructive contract. *Legros* at 7.  As we further explained in *Martin*, "[t]he primary difference between express contracts and contracts implied in

fact is one of proof—the former is proven by words (oral or written) and the latter is proven by acts, conduct, and circumstances." *Martin* at ¶ 40; citing *J.S. Keate & Co. v. Barnett's Car Wash, Inc.*, 1st Dist. Hamilton Nos. C–920895 and A–8903768, 1994 WL 10650, *3 (Jan. 19, 1994); citing *Weinstein v. Newman*, 89 Ohio App. 301, 101 N.E.2d 772 (1st Dist.1951).

{¶17} In order for it to be enforceable, a contract must be both definite and certain. *Martin* at ¶ 42; citing *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19. Furthermore, a contract price must be definite and certain, and if it is so vague and indefinite that one party will charge what he will while the other party must guess at his obligation, the contract is illusory and unenforceable. *Id.*; citing *Ameritech Publishing, Inc. v. Snyder Tire Wintersville, Inc.*, 7th Dist. Jefferson No. 09 JE 35, 2010-Ohio-4868, ¶ 32; *Vargo v. Clark*, 128 Ohio App.3d 589, 595, 716 N.E.2d 238 (4th Dist.1998) ("Vagueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement prevent the creation of an enforceable contract").

{¶18} Nevertheless, " ' "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty [and] * * * [i]n spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make." ' "

*Martin* at ¶ 43; quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 17, quoting 1 Corbin, Corbin on Contracts, Section 4.1 at 530 (Perillo Rev. Ed. 1993).  As a result, " '[c]omplete clarity in every term of the agreement is unnecessary because all agreements have some degree of indefiniteness and uncertainty.' " *Id.*; quoting *DePompei, supra,* at ¶ 22; quoting *Advantage Renovations, Inc. v. Maui Sands Resort, Co., LLC*, 6th Dist. Erie No. E–11–040, 2012-Ohio-1866, ¶ 18.  " '[S]eldom, if ever, does the evidence in proof of an oral contract present its terms in the exact words of offer and acceptance found in formal written contracts.  And no such precision is required.' " *DePompei* at ¶ 22; quoting *Rutledge v. Hoffman*, 81 Ohio App. 85, 86, 75 N.E.2d 608 (1st Dist.1947).

{¶19} Here, the parties have stipulated that they entered into a written contract.  A review of the record reveals that the "contract" the parties stipulate they entered into was in the form of a written purchase order issued by Appellee to Appellant.  As explained above, in response to Appellant's request for a contract, Appellee prepared a purchase order dated March 29, 2016.  The purchase order was signed by both parties on that date and simply stated under a column titled "Description:" "INSTALL DRILLED SHAFTS FOR EXC. BRACING."  The purchase order stated the quantity was "1" at the "Unit Price" of "$14,000.00" for a "Total" of "$14,000.00."

**{20}** Our research has revealed that it seems to be the practice in the construction industry for a general contractor to issue a purchase order to a sub-contractor once a bid is accepted, which results in a binding agreement. *See My Erectors, Inc. v. Fairfield Engineering Co*., 8th Dist. Cuyahoga No. 52436, 1987 WL 18264, *1 ("If a subcontractor's final bid is accepted, the general contractor forwards a purchase order, which is the usual contract between the general contractor and the subcontractor).  However, our research also reveals that a formal contract is typically entered into thereafter. *See Complete Gen. Constr. Co. v. Kard Welding, Inc*., 182 Ohio App.3d 119, 2009-Ohio-1861, 911 N.E.2d 959, ¶ 7 (noting it was the general contractor's practice to issue a purchase order to a subcontractor when it agreed on terms and wished to enter into a formal contract, which was usually followed by the issuance of standard "TERMS AND CONDITIONS" that would replace the terms of the purchase order, and that no contract was entered into where Complete General never issued a purchase order to Kard); *see also Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 3 (explaining that Boone Coleman Construction submitted the lowest bid, was hired for the project, and then the parties entered into a written contract).  Here, however, aside from the purchase order, there was no separate written contract.

Rather, the parties appear to have engaged in a series of verbal conversations and emails, leading up to and contemporaneous with the issuance of the purchase order, and thereafter, regarding the number of holes to be dug and the time in which that was to be accomplished. The trial court noted this as part of its orally-issued findings of fact at the conclusion of the bench trial.

{¶21} On the record at the conclusion of the bench trial, the trial court found that the purchase order, identified in the record as Exhibit B, constituted a written contract. However, the trial court also stated as follows regarding that document and the parties' agreement:

> "Um, I'll also make a finding of fact, um, that the Exhibit 'B' uh, is the uh core of what became the larger contract it is to say there was a meeting of the minds an agreement, um, with the purchase order or Exhibit 'B' uh, but that the contract was more than that. But I do find there was a contract. When I say the contract was more than that it was the, it was the verbal conversations that were in additions to um, the actual purchase order.
>
> * * *
>
> Now in regard to um, a few of the things uh, that were, that were part of the contract. Um, I look at the purchase order and there is on the purchase order signatures, it's dated, March the 29th of 16. Um, the $14,000 dollars is on there. Uh, install drilled shafts for excavating bracing. So, there's some stuff in that purchase order, but there was I believe, and I'll make the finding of fact that the parties had other things besides what was in there as part of this contract. Um, it was actually testified in this matter that it was understood that eight holes were to be dug. Now nowhere in that purchase order does it say eight holes or at least I don't see anything about eight holes.

> There were things that were understood that were part of this contract. Um, and this really, I think is, is the part of this that becomes most important as to what was the contract? What, what were the terms, what was the meeting of the minds, what was the terms of the contract?"

Thus, it seems the trial court found that the purchase order, while constituting a written contract in and of itself, simply served as the "core" of what was a larger agreement, which appears to have been reached orally.

{¶22} For instance, the parties do not dispute that it was their understanding that eight holes needed to be drilled for the required excavation bracing. As noted by the trial court, this important detail of the parties' agreement is not contained in the written purchase order, but it was nevertheless an understood term of the agreement. Further, the parties are in agreement that Appellant was to mobilize his rig and bring it to the job site on Tuesday, April 5, 2016, once the traffic control device was put into place. This detail was also omitted from the purchase order. However, the parties disagree as to what day drilling was to begin, and the written purchase order does not specify. As such, the central issue in this case involves whether time was of the essence in the parties' agreement, with respect to the date Appellant was to begin drilling holes for excavation bracing. Appellant argued that it was not, while Appellee insisted it was. Thus, the trial court

was presented with two different versions of the facts on this particular issue.

**{¶23}** As was recently explained in *Shelton v. Twin Township*, 2015-Ohio-1602, 30 N.E.3d 1047, at ¶ 40:

> "Ohio courts are split as to whether and when 'time is of the essence' may be implied in a contract. Generally, time of performance is not of the essence to a contract unless expressed. *Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763 (11th Dist.1993); *Mays v. Hartman*, 81 Ohio App. 408, 412, 77 N.E.2d 93 (1st Dist.1947). However, some courts have found it may be implied that time is of the essence depending on the nature of the contract or circumstances under which it was negotiated. *Green, Inc. v. Smith*, 40 Ohio App.2d 30, 37–38, 317 N.E.2d 227 (4th Dist.1974); *Franklin Mgt. Indus., Inc. v. Far More Properties, Inc.*, 8th Dist., 2014-Ohio-5437, 25 N.E.3d 416, ¶ 16. Other courts have found that it may be implied whenever a definite date is fixed for compliance. *See, e.g., Lake Ridge Academy v. Carney*, 9th Dist. Lorain No. 91CA005063, 1991 WL 215024, *4 (Oct. 16, 1991); *Calabrese v. Vukelic*, 7th Dist. Jefferson No. 94–J–37, 1995 WL 750140, *1 (Dec. 14, 1995), citing *Domigan v. Domigan*, 46 Ohio App. 542, 546, 189 N.E. 860 (5th Dist.1933). Finally, there are courts that combine the above approaches and consider both the nature and circumstances of the negotiation, as well as the fixed date of the contract in determining whether to imply that time is of the essence. *Marion v. Hoffman*, 3rd Dist. Marion No. 9–10–23, 2010-Ohio-4821, 2010 WL 3839439, ¶ 23; *Nippon Life Ins. Co. of Am. v. One Source Mgt., Ltd.*, 6th Dist. Lucas No. L–10–1247, 2011-Ohio-2175, 2011 WL 1782089, ¶ 24."

As in *Shelton*, whether or not Appellant herein committed a material breach in failing to at least begin drilling some of the holes on Tuesday, April 5,

2016, turns upon whether time of performance was of the essence to the contract.

{¶24} This Court, in *Green, Inc. v. Smith, supra,* held that "[e]ven if time was not originally considered to be of the essence in a contract for the sale of real property, it may subsequently be made so by the conduct of the parties." *Id.* at syllabus. Regardless of whether the written contract, here the purchase order, contained a term regarding the time for performance of the installation of the drilled shafts for the excavation bracing, the above case law indicates that the time for performance may be made of the essence by implication at the time of the making of the contract, or may be subsequently made so by the conduct of the parties.

{¶25} Obviously, during the bench trial, the trial court heard two different versions of the facts. Sam Pschesang testified on behalf of Appellant that the purchase order constituted the contract between the parties and that time of the essence was not a term of the contract. He admitted, however, that additional discussions took place, via email and orally, regarding the specifics of performance, including when he was to mobilize his equipment and arrive at the job site. As set forth above, Mr. Pschesang initially testified he could not begin drilling on April 5th because the necessary steel for the job had not been delivered. Then he testified that

he could not begin drilling that day because he didn't arrive at the job site until noon with his rig, and that he had not brought his auger bit with him, as the two could not be hauled at the same time. It was his position in his testimony that there was no understanding that drilling would begin on Tuesday, only that it would be concluded on Friday.

{¶26} To the contrary, Edmund McVey, on behalf of Cooper's Excavating, testified that he had telephone conversations with Sam Pschesang, beginning about a month before execution of the purchase order, regarding specific dates for performance. He testified he issued the purchase order expecting the work to be performed on Tuesday the 5th of April, once the traffic control device was put into place. He disagreed with Appellant's testimony regarding the steel, stating the steel was present on the job site when it needed to be, and that the work Appellant was contracted to perform did not involve the steel. He testified that further work on his end could not be performed until drilling occurred, and that Appellant's failure to perform on Tuesday would have put the job three days behind had he not been able to mitigate damages by finding another sub-contractor that could perform the drilling work the next day, on Wednesday, April 6, 2016.

{¶27} Ultimately, the trial court found Appellee's version to be the more credible, stating as follows:

"I believe that part of the contract was that [substantive] hole digging was to be done on Tuesday the 5th. Um, I find also as a part of this uh, that there were inconsistency [sic] in the interrogatories of Mr. Pschesang sometimes it felt like digging didn't start on the 5th because the steel wasn't there. Sometimes I think Mr. Pschesang felt in his testimony that he just didn't have to do it on Tuesday the 5th because he could always come back on Friday the 8th.

But, my finding from the testimony and from the Exhibits is that it was a meeting of the minds at least when the contract/purchase order on March 29th. Is that there was to be [substantive] hole digging done on Tuesday the 5th. Um, whether that was the entire eight holes or four holes. Um, the fact that, that, that SP Drilling couldn't be there on Wednesday and Thursday didn't mean that nothing could start until the 8th. It meant that something needed to start on the 5th.

Um, and that really of course is the, is the, is the thing that gets this court, those findings of fact gets this court the conclusion that the breach of this contract occurred when um, SP Drilling left on Tuesday the 5th, and didn't drill any holes."

{¶28} Here, the trial was to the court, not to a jury. As such, the trial court judge served as the trier of fact. Weight and credibility of the evidence are issues that the trier of fact must determine. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 106; *State v. Dye*, 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1998). The trier of fact is in the best position to weigh witness credibility because it may view the witnesses, observe their demeanor, gestures and voice inflections. *Myers v. Garson*, 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Consequently, a trier of fact may choose to believe all, part or none of the

testimony of any witness who appears before it. *See State v. Colquitt*, 188 Ohio App.3d 509, 2010-Ohio-2210, 936 N.E.2d 76, ¶ 10, fn. 1; *State v. Nichols*, 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (1993).  In the instant case, the trial court found Appellee's testimony more credible and apparently determined that Appellant and Appellee, by their actions and considering the nature and circumstances of the work to be performed, or through an implied agreement, made time for performance of the essence.  The trial court further found, as a result, that Appellant's failure to begin drilling on Tuesday, April 5, 2016, constituted a breach of the contract.   We find no error with these findings.  Further, there is evidence in the record, in the form of testimony from Edmund McVey to support the trial court's findings.

{¶29} Accordingly, we find no merit to Appellant's first and second assignments of error and they are, therefore overruled.

ASSIGNMENT OF ERROR III

{¶30} In his third assignment of error, Appellant contends that he suffered damages as a result of Appellee's breach of the contract.  However, in light of our disposition of Appellant's first and second assignments of error, which held that the trial court properly found time of performance was of the essence in the parties' contract and that Appellant, not Appellee, breached the contract by failing to at least begin drilling operations on

Tuesday, April 5, 2016, Appellant's third assignment of error has been rendered moot.  Thus, we do not address it.

{¶31} Accordingly, having found no merit in the arguments raised in this appeal, the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY: _____
Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**